STATE, ANNIE M. GREEN, EXECUTRIX, v. MAYOR AND COMMON COUNCIL OF JERSEY CITY.

1. The charter of Jersey City (*Pamph. L.* 1871, p. 1126, § 66,) provides that no *certiorari* shall be granted or allowed to stay any proceeding (except the collection of final assessments) for any street or sewer improvement, unless the writ be allowed before  *  *  *  the making of the contract, in case a contract is to be made; *provided*, that if the applicant shall, before the making of such contract, file  *  *  *  a written notice of his purpose to apply for such writ, then the writ may be allowed within thirty days thereafter.

2. By a supplement to the charter, (*Pamph. L.* 1873, p. 406, §§ 23, 24,) it is provided that if, at the hearing of property owners before the board of public works—which is held previous to the making of the contract—a remonstrance against such improvement shall be presented, signed by the owners of the property liable to one-half of the assessment therefor, the said board shall proceed no further with said improvement. *Held*—

   1. That where a *prima facie* case was presented to this court, showing that such a remonstrance had been presented at a hearing, and that thereafter the board proceeded to make a contract, that a writ of *certiorari* allowed after the making of the contract, to bring up the contract and proceedings, would be retained, although no notice of a purpose to apply for it had been given.

   2. That, upon the assumption that such remonstrance was filed, the making of the contract was not a part of the statutory proceeding, but outside of it, and so the statutory limitation of the right to review by *certiorari* did not apply to it.

   3. That the legislature has the power to reasonably regulate, but not abolish, the use of the writ of *certiorari*, either directly or indirectly.

The writ of *certiorari* in this case was allowed to bring up an act of the board of public works in Jersey City, in entering into a contract for the construction of a public sewer in the streets of that city.   A motion is now made by the counsel of the city to dismiss the writ, upon the ground that it was improvidently granted.

Argued at November Term, 1879, before Justices WOOD-HULL and REED.

For the prosecutor, *Scudder & Vredenburgh.*

For the defendant, *A. McDermott* and *L. Abbett.*

The opinion of the court was delivered by

REED, J.   The sixty-sixth section of the charter of Jersey City (*Pamph. L.* 1871, *p.* 1126,) provides that no *certiorari* shall be granted or allowed to stay any proceeding (except the collection of final assessments) for any street or sewer improvement, unless the writ be allowed before the filing with the city clerk of a copy of the resolution for the payment of awards, in case awards are to be paid, or before the making of the contract, in case a contract is to be made; *provided,* that if the applicant for such writ shall, before the filing of such resolution or the making of such contract, file with the clerk of the board of public works a written notice of his purpose to apply for such writ of *certiorari,* such writ may be granted or allowed, and served at any time within thirty days after the filing of such notice; and the filing of such resolution, or the making of such contract, shall be delayed by the said board until the expiration of the said thirty days.

To understand the allusion in the above section to the making of the contract, it is essential that reference shall be made to the proceeding in which the contract is executed.

The proceeding for the construction of sewers in Jersey City corresponds with the proceedings for the paving of streets.   *Pamph. L.* 1871, *p.* 1123, § 59.   The proceeding

for paving streets is contained in Section 47 of the charter, *supra*.

The charter originally provided that an application should be made to the board of public works for such improvement, and that the board directed notice of such application to be given by advertisement, specifying the time and place when and where said board would meet and hear parties.

After the hearing, if the board determined to make the improvement, they were to advertise for proposals for the work; and upon the coming in of the proposals, the board might contract.

It is perceived that the making of the contract occurred at a considerable period of time after the hearing. This order of procedure, however, was radically changed by the supplement to the charter of Jersey City passed in 1873. *Pamph. L.* 1873, *p.* 406, §§ 23, 24.

This act requires the application for the improvement to be signed, not by any person merely, as under the original act, but by one-third of the frontage owners.

By this act, instead of the advertising the time and place of hearing, and the hearing thereupon being the succeeding step, as under the original act, it is provided that, for the information of all persons interested, the board shall, before the time of hearing, determine upon what bid the contract shall be awarded, and cause to be filed in the clerk's office a sketch showing what property will probably be assessed and the probable amount per foot of frontage.

By the supplement, therefore, the steps are, the application, advertisement for proposals, acceptance of bid, filing a sketch of assessable property, the hearing of property owners, and then the contract for the execution of the work. Now, by Section 24, it is provided that if, at the hearing, a remonstrance against such improvement shall be presented to the board of public works, signed by the owners of the property liable to more than one-half of the assessment therefor, the said board shall proceed no further with such improvement.

The counsel for the prosecutors allege that such a remon-

strance was filed at the time of the hearing in the present cause.

From the affidavits on file, I think such a *prima facie* case of the existence of that state of affairs exists as to warrant the granting of an allowance of the present writ. The contention of the counsel for the city is that, although that may be so, yet the prosecutors lost the right to sue out the writ, by their failure to comply with Section 66 of the charter, which I have already transcribed. That section provides, as we have seen, that no writ shall be taken except to review final assessments, unless taken before the making of the contract, or unless written notice of such a purpose be given; and then the making of the contract shall be postponed for thirty days, in which interval the writ can be purchased.

The contract in the present proceedings was made before the allowance of this writ. No notice of a purpose to apply for it was given.

Does, therefore, this admitted state of facts warrant the dismissal of this writ as having been improvidently granted?

I think it cannot be denied that a strict application of the words of the act forbids the allowance of such a writ, subsequent to the making of the contract, until after the final assessment is made. The contention on the part of the city, that a writ may issue to review, but cannot be permitted to operate as a *supersedeas*, is not well grounded. I do not think that, from the use of the words, " no *certiorari* shall be granted or allowed to stay any proceeding," that there arises an implication that a writ may issue to review, but not to stay.

The legislative intent was to prevent delay; and, as the usual effect of a writ is to stay, the words succeeding the word *certiorari* were used to indicate the object of the restriction upon the use of the writ. The meaning of the statute would more accurately be expressed if phrased thus: " No proceeding shall be stayed by the granting or allowance of a *certiorari*, unless such writ shall be allowed before the making of the contract." But if the intent appeared in the statute, as the

counsel claims, I do not think it is within the limits of legislative ability to deprive the writ of *certiorari* of any of its attributes as a prerogative writ. One of its attributes is its operation as a stay. *Bac. Abr., tit. "Certiorari,"* (9); *Patchen* v. *Mayor of Brooklyn,* 13 *Wend.* 664; *Mairs* v. *Sparks,* 2 *South.* 514; *Kingsland* v. *Gould,* 1 *Halst.* 161; *McWilliams* v. *King,* 3 *Vroom* 21.

If the operative force of the writ can be changed at all—if it can be denuded of its vigor in one particular, so it can in all; and thus the entire character of the writ, as it has heretofore existed, can be so mutilated that the writ will become, in fact, obsolete. That the legislature cannot directly divest this court of the power to employ this writ, was decided in the case of *Traphagen* v. *Township of West Hoboken,* 10 *Vroom* 232.

As there is no power to so disarm this court by direct legislation, neither can the result be accomplished by a series of approaches, each of which partially effects the same purpose. These observations are, of course, not intended to restrict the power of this court to modify or control the operation of the writ as a *supersedeas*, to meet the exigencies of each case.

But assuming that this is so—that there is no power in the legislature, directly or indirectly, to abolish the use of this writ—yet a reasonable regulation as to the time within which it is to be sued for and allowed, is admittedly valid.

Whether, in the review of the present proceedings, or the class of municipal proceedings to which the present belongs, the legislature could enact that no writ should issue till the proceedings were terminated in the final assessment, is not a question which, in this case, presses for a decision.

The question does not require a solution, because no such intent is apparent in the charter. The manifest intention of the charter is to allow a writ to review any step in the proceedings, previous to the making of the contract for work. That the free use of the writ to review all the proceedings, previous to the making of the contract for and commencement of the work, should be permitted as an act of legislative

wisdom, whatever the legislative power may be, is obvious. If the writ is restricted so as to be purchasable only after the work is executed, the court could, with no propriety, refuse to listen to objections urged to the proceedings anterior to the execution of the work.

They could not say to the prosecutor, as we do now, You stood by and saw this work done; why did you not see that the preliminary proceedings were illegal, before this expense was incurred? It is now too late to object. *State, Ropes, pros., v. Essex Public Road Board,* 8 *Vroom* 335; *State, Hoboken L. & I. Co., pros., v. Hoboken,* 7 *Vroom* 291; *State, Wilkinson, pros., v. Inhabitants of Trenton, Id.* 499.

The effect would therefore be that the expenses of the work would, in those instances where there existed defects in the preliminary proceedings, become a burden upon the municipality. In the effort to restrict the use of the writ by the provision in the charter of Jersey City, this difficulty is wisely guarded against, by allowing the use of the writ up to the time of contracting for the work. The contention is that, so far as concerns the present case, its use was so limited as to time as to amount to an actual deprivation of the use of the writ. The question incidentally involved in the controversy is the filing of the remonstrance against the improvement, at the time of the hearing. Upon the existence of the fact that such paper, representing owners of more than one-half of the assessable property, was filed, depends the validity of the contract. The contract, therefore, is really attacked, and nothing else.

Now, the making of the contract is the immediately succeeding step after the hearing, in which a remonstrance was filed. The contract could have been made within five minutes after the meeting adjourned. It is strongly pressed that, to require a notice to be given on the heels of the hearing that a *certiorari* will be applied for, before the party has the opportunity to investigate and take counsel whether he will take a writ, is unreasonable. The question of the reasonableness of the provision must rest upon the facts of each case as it arises.

When a review is desired of any matter arising previous to the hearing, it could hardly be contended that the length of time between the event and the making of the contract was so brief as not to afford a diligent suitor a reasonable interval to procure his writ or give his notice. Nor am I prepared to say that a person who attends the meeting, or has notice to do so, should not be prepared to give notice, at that time, that he intends to apply for a writ as to many irregularities that might attend the proceedings of the board at the hearing. Of course this would depend upon the fact whether the irregularity is one apparent to any one present, or one discoverable only upon investigation. In regard to any supposed irregularity, the person affected can fortify his position by a notice, which he may pursue or abandon, as he may afterwards decide. Inasmuch, however, as the determination of each case must rest upon the special features which it presents, it is only intended to decide the present case upon its own showing of fact.

The present case presents peculiar features. It is not a case which involves a mere irregularity at the meeting, which subjects subsequent proceedings to an attack. It presents a case where an act is alleged to have been done, which, by the terms of the charter, by its own force, arrests the proceedings at that stage. We have already concluded that a *prima facie* case is made—that a remonstrance, signed by the owners of one-half the assessable property, was filed. And in passing, it may be said that the assessment here meant is the experimental assessment already made, and not the final assessment.

Now, upon the filing of this remonstrance, it is perceivable that every person cognizant of it would assume, and have the right to assume, that no further proceeding would be taken. Any one would assume that the hearing was the final stage of the proceeding.

There would be no reason to give a notice of an intention to apply for a writ, because there is nothing to review. No error occurred at the hearing. The matter objected to is the making of a contract as a pretended step in the proceeding subsequent to the hearing.

This brings us to the true reason for the failure of the charter restriction to cut off the allowance of the writ. Inasmuch as the proceeding ended with the filing of the remonstrance, the contract was not a part of the proceeding. Its execution was an act without statutory authorization. It was outside of, not under, the statute. The charter restriction applies to the review of a step in the statutory proceeding.

It can have no force in preventing the allowance of a writ to review an act not only outside of this proceeding, but in contravention of the provisions of the charter.

The question to be finally determined is whether the making of the contract is a part of these proceedings. That depends upon the proof relative to the character of the remonstrance filed.

If what appears now as a *prima facie* case, is there shown to be not the true case, the contract will appear to be a part of the proceedings, and the writ must be dismissed. If, however, it appear otherwise, the contract will be vacated, and the writ, of course, retained.

The motion to dismiss is refused. As the prosecutor was allowed to supply affidavits after the motion to dismiss was made, no costs will be allowed.