STATE OF MISSOURI at the relation of KANSAS CITY BRIDGE COMPANY, a Corporation, Relator, v. BEN TERTE, Judge of Division Nine of the Circuit Court of the Sixteenth Judicial Circuit.—131 S. W. (2d) 587.

Division Two, September 12, 1939.*

---

*NOTE: Opinion filed at May Term, 1939, July 7, 1939; motion for rehearing filed; motion overruled at September Term, September 12, 1939.

96

*Lathrop, Crane, Reynolds, Sawyer & Mersereau, Richard S. Righter, R. Arch Smith* and *William A. Graham* for relator.

*Cowgill & Popham, Guy Green, Jr., Clinton R. Krimminger* and *W. Porter Bondies* for respondent.

BOHLING, C.—This proceeding in prohibition is pending on relator's motion for judgment on the pleadings.

In March, 1938, Cora A. Liechty instituted an action for a declaratory judgment in the Circuit Court of Jackson County, Missouri, against the Kansas City Bridge Company, a Missouri corporation, relator here, the general objects and purposes of which action were a declaration that a certain divorce decree granted Lewis E. Liechty is of no force and effect; that she is the lawful widow of Lewis E. Liechty; and that certain proceedings instituted by her before the Workmen's Compensation Commission of Missouri be stayed pending the determination of her status under said petition. Her petition alleged her marriage to Lewis E. Liechty on October 23, 1921; Lewis E. Liechty's obtaining a divorce on the 20th day of September, 1935, in the District Court of Wyandotte County, Kansas; the death of Lewis E. Liechty on July 24, 1937, as the result of an accident arising out of and while performing services within the scope of his employment for said Kansas City Bridge Company; and her filing of due and timely claim for compensation under the Workmen's Compensation Law of Missouri. It charged that she had never lived in Kansas with said Lewis; that she was never served with summons; that said Lewis made a false affidavit in aid of service by publication in swearing he did not know and had been unable to ascertain whether she was living or dead or her whereabouts; that he testified he did not know petitioner's whereabouts and was unable to forward registered notification of said suit, all in contravention of the laws of Kansas; that said decree was procured by fraud upon the court and petitioner; that Lewis E. Liechty left no estate and no minor children surviving; that the Kansas City Bridge Company was a self-insurer, and that she and said company were the only parties interested in or to be affected by said compensation proceedings or the relief prayed. It further alleged that the record and decree in the Kansas divorce proceeding "are valid on their face." Relator's demurrer *nisi* was overruled and this proceeding followed.

Section 1 of the Missouri Declaratory Judgment act (Laws 1935, pp. 218-220, Mo. Stat. Ann., secs. 1097a-1097o, p. 1388) provides: "The Circuit Courts and Courts of Common Pleas of this State, within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."

The Michigan Declaratory Judgment act (Mich. C. L. 1929, Sec. 13903) reads, in part: "No action or proceeding in any court of record shall be open to objection on the ground that a merely declar-

atory judgment, decree or order is sought thereby, and the court may, in cases of actual controversy, make binding declarations of rights . : ." In Miller v. Siden, 259 Mich. 19, 242 N. W. 823, the Michigan court ruled "The proceeding for declaratory judgment is not a substitute nor alternative for the common law actions." [Sec, also, Eiffel R. & I. Co. v. Ohio Citizens Trs. Co., 55 Ohio App. 1, 8 N. E. (2d) 470[1], reviewing cases; Brindley v. Meara, 209 Ind. 144, 198 N. E. 301, 101 A. L. R. 682, 688; Annotation, 87 A. L. R. 1219,h.]

The Kentucky act (Carroll's Ky. Code, 1938, Sec. 639a-1) provides: "In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, . . . ." The case of Ferree v. Ferree, 273 Ky. 238, 115 S. W. (2d) 1055, is somewhat analogous to the instant action. Emma Ferree had obtained a divorce from Cyrus Ferree while he was confined in the penitentiary and was awarded alimony and a lien on his land to secure payment. Thereafter, Cyrus Ferree, claiming the whole divorce proceeding was void, instituted his action for a declaration of rights. The court said: "In Black's Guardian v. Bardo, 234 Ky. 211, 27 S. W. (2d) 960, we pointed out that the purpose of the Declaratory Judgment Act was to have a declaration of rights not theretofore determined, and not to determine whether rights, theretofore adjudicated had been properly adjudicated, and held that an action will not lie under the Declaratory Judgment Act to determine the propriety of a judgment in a prior action between the same parties. Were the rule otherwise, a proceeding would lie under the Declaratory Judgment Act to determine whether the judgment passing upon the validity of a prior judgment was proper, and there would be no end to that kind of litigation. It follows that the petition was properly dismissed."

Respondent cites Dodge v. Campbell, 128 Misc. 778, 220 N. Y. Supp. 262; Baumann v. Baumann, 222 App. Div. 460, 226 N. Y. Supp. 576, approved 250 N. Y. 382, 165 N. E. 819; Gold v. Gold, 156 Misc. 93, 275 N. Y. Supp. 506; Pignatelli v. Pignatelli, 169 Misc. 534, 8 N. Y. Supp. (2d) 10; Lowe v. Lowe, 265 N. Y. 197, 192 N. E. 291; Henry v. Henry, 104 N. J. Eq. 21, 144 Atl. 18; Miller v. Currie, 208 Wis. 199, 242 N. W. 570. The Miller case involved the legality of an alleged common-law marriage and an alleged bigamous marriage. No prior adjudication of the status of the parties was involved. The other cases are to the effect that declaratory proceedings are proper to determine the marital status of litigants in the circumstances mentioned in the Greenberg case, infra.

Decrees of divorce granted upon constructive service in a sister state have a materially different legal status in New York and Missouri. [Ball v. Cross, 231 N. Y. 329, 331, 334, 132 N. E. 106, 107[1], 108, 39 A. L. R. 600, 601, 603.]

Greenberg v. Greenberg, 218 App. Div. 104, 112, 218 N. Y. Supp. 87, 94[2], quoting a reason, states the New York rule: "This state has settled as its adjudged policy to refuse to recognize as binding a decree of divorce obtained in a court of a sister state, not the matrimonial domicile, upon grounds insufficient for that purpose in this state, when the divorced defendant resided in this state, and was not personally served with process and did not appear in the action." The ruling does not contravene the full faith and credit clause (Art. 4, Sec. 1) of the Federal Constitution. [Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, affirming 178 N. Y. 557, 70 N. E. 1099, 76 App. Div. 620, 79 N. Y. Supp. 1133. Consult Davis v. Davis, 305 U. S. 32, 59 Sup. Ct. 3, 83 L. Ed. 52; Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794; Annotations: 5 Ann. Cas. 26; 39 A. L. R. 603; 105 A. L. R. 817.]

Dodge v. Campbell (l. c. s refer to 220 N. Y. Supp.), was an action, pending on the sufficiency of the petition, by Anna S. Dodge, the first wife of Byron G. Dodge, and the children of said Anna and Byron against Mary A. Dodge (formerly known as Lillian Campbell), the purported second wife of said Byron, to determine the relationship of the parties with said Byron, who had departed this life. The allegations embraced issues involving the validity of a divorce granted in Pennsylvania to said Byron from said Anna (l. c. 264); and also a New York decree dissolving the marriage of Lillian Campbell to John F. Campbell (l. c. 267). The court ruled the allegations disclosed that the Pennsylvania court acquired jurisdiction over the parties in the cause of Dodge v. Dodge; that said decree of divorce could not be attacked collaterally [l. c. 266 [3] et seq.], and dismissed the complaint as to said Anna S. Dodge, directing plaintiffs to eliminate the allegations relating to the Pennsylvania divorce (l. c. 269). However, speaking to an allegation that neither Lillian Campbell nor John F. Campbell were residents or domiciled in New York prior to the dissolution of their marriage, the court considered actual residence or domicile of one of the parties within the State essential to render a domestic order of dissolution "safe from collateral attack" (l. c. 267, 268[9]); that the marriage of Lillian Campbell and Byron G. Dodge was "absolutely void," rather than "voidable" (l. c. 268[10]); and that the New York court lacked jurisdiction and its order dissolving the Campbell marriage was a nullity (l. c. 269[11]). If the Campbell-Dodge marriage was absolutely void, rather than voidable, it must have been so considered because the Campbell divorce proceeding was void rather than voidable, the Dodge divorce proceeding being held valid. The Dodge case further states (l. c. 267[7]): "It has been said that our matrimonial actions for divorce or annulment are *in personam*;" and comments on the paradox that where the situation is the reverse of that stated in the Greenberg case the New York courts entertain jurisdiction. We do not refer to other possible distinctions.

■ On the other hand Missouri courts hold: "A suit for divorce, so far as it seeks to dissolve the marriage relation merely, is a proceeding *in rem* and the thing proceeded against is the status of marriage." "The decree so pronounced is a judgment *in rem* . . ." [Coffee v. Coffee (Mo. App.), 71 S. W. 141, 142[2, 6]; Lieber v. Lieber (Banc), 239 Mo. 1, 55, 143 S. W. 458, 475; Gould v. Crow (Banc), 57 Mo. 200, 203.] Howey v. Howey (Banc), 240 S. W. 450, 453[4] (certiorari denied, 260 U. S. 730, 67 L. Ed. 485, 43 Sup. Ct. 92), quotes and approves the earlier case of Howard v. Strode, 242 Mo. 210, 225, 146 S. W. 793, 797[8] (discussing the Haddock case), holding that the policy of Missouri is to recognize "the validity within its borders of such foreign divorces [speaking of decrees of divorce rendered on constructive service]. . . . This policy violates no rights under either the federal or state constitution." Other Missouri cases are to like effect.

The judgment involved in the respondent's New York cases appear to have the status of void judgments—dead limbs upon the judicial tree—under the New York law. Likewise, the Nevada judgment questioned in Henry v. Henry, supra, under the New Jersey law.

■ In the instant case respondent concedes the Kansas divorce is voidable rather than void. The broad rulings of the Michigan and Kentucky cases are not called for. Section 12 of our act states it is "remedial;" "its purpose is to settle and to afford relief from uncertainty and insecurity . . .;" and it is to be "liberally construed and administered." Liberality of construction and administration should not extend its scope beyond its import. Its function as declared by its title is to authorize and empower "circuit courts to declare rights, status and other legal relations, by declaratory judgments and decrees." If remedial, it does not abolish or furnish an additional for an existing adequate remedy but supplies a deficiency or abridges a superfluity in the law. ■ The controversy between Cora A. Liechty and the Kansas City Bridge Company has its foundation in Mrs. Liechty's claim under the Missouri Workmen's Compensation Law, and only incidentally involves the divorce proceedings had in the State of Kansas. Our Declaratory Judgment act was not intended as a substitute for a new trial or an appeal or review proceedings, or a mode for testing, in the circumstances here involved, the finality of a judgment. To so hold would permit the act to add to rather than relieve from uncertainty and insecurity and be in contravention of its fundamental principles and beyond the purposes and scope of its title and provisions. We rule that the Missouri Declaratory Judgment act may not be invoked to test the validity of a judgment roll, admittedly valid and regular on its face, of a competent court in an action against a stranger to the record of said judgment.

Our provisional rule in prohibition is made absolute. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.