LEWIS EDWIN LEICHTY, Deceased, Mrs. L. E. Leichty, Claimant, v. KANSAS CITY BRIDGE COMPANY, Appellant.—No. 39379.—190 S. W. (2d) 201.

Court en Banc, October 1, 1945.

Rehearing Denied, November 5, 1945.

*Luke, Cunliff & Wilson* and *Lathrop, Crane, Sawyer, Woodson & Righter* for appellant.

*H. P. Tudor, William H. Tombrink* and *Strubinger, Tudor & Tombrink* for respondent.

632

CLARK, C. J.—Appeal by Kansas City Bridge Company, former employer of Lewis Edwin Leichty, deceased, from a judgment of the circuit court affirming an award of the Workmen's Compensation Commission in favor of claimant as the sole dependent of deceased.

The claim, filled out on a printed form furnished by the Commission, states that deceased came to his death as the result of an accident while in the employ of appellant; that claimant is the widow and sole dependent of deceased, etc. Appellant filed a general denial and no other pleadings were filed with the Commission or in the circuit court.

At the hearing before a Commissioner admissions were made as follows: that deceased was in the employ of appellant and came to his death as the result of an accident while in the course of his employment; that appellant and deceased had duly elected to come under the Compensation Act; and that appellant had filed its report of the accident and respondent had filed her claim with the Commission within the time required by law. The average weekly wages of deceased were agreed to.

Claimant introduced a marriage license and certificate showing that she was married to deceased in Texas in 1921, and testified that they lived together as husband and wife in Texas and later in Oklahoma.

Appellant offered a record, duly authenticated under the acts of Congress, of a divorce decree obtained by deceased in Kansas in 1935 upon service on claimant by publication.

Claimant objected to the receipt of this evidence on the ground that the divorce was fraudulently obtained, stating in detail the reasons for so claiming. The Commissioner admitted the evidence "for what it is worth."

Then the claimant, over appellant's objection, introduced evidence tending to show: that deceased obtained the order of publication in the divorce case by falsely swearing that he did not know her address; that at the time he instituted the divorce suit, during its progress and later, he was in correspondence with her, addressing his

letters to her at Oklahoma City where she was staying, some letters to that effect being received in evidence; that when he filed suit he wrote to a woman at a town in Texas that he had caused a copy of the petition to be mailed there as his wife's last known address, (as required by the Kansas statute) and asked the woman to tell "them you don't know her address and it will be returned here" so his wife couldn't cause trouble in the divorce suit; that after the divorce decree deceased joined with claimant as husband and wife in executing and acknowledging a deed to real estate; that after the decree of divorce deceased visited claimant, lived with her as her husband for a short time and introduced her as his wife; that claimant did not learn of the divorce decree until after her husband's death.

Appellant objected to claimant's evidence as being a collateral attack on the Kansas judgment and in conflict with the "full faith and credit" clause of the Federal Constitution. Appellant offered evidence tending to contradict or discredit a portion of the testimony offered on behalf of claimant. After the evidence was in the Commissioner made a finding that the divorce was procured by fraud.

The sole issue tried was as to whether claimant was the wife of deceased at his death. That issue was decided in favor of the claimant by the Commissioner, on review by the full Commission and on appeal by the circuit court.

Appellant asks us to reverse the judgment on the following grounds: (1) that the Commission and the circuit court have failed to give full faith and credit to the Kansas judgment; (2) the Commission exceeded its jurisdiction because it has no equitable power; (3) the Kansas judgment could not be set aside in this proceeding, regardless of whether or not the Commission has equitable power, for the attack is a ▮ collateral one; (4) the judgment is not supported by competent evidence.

▮ Beginning with Marx v. Fore, 51 Mo. 69, this court has consistently held that judgments rendered in other states are open to inquiry as to the jurisdiction of the court and notice to defendant notwithstanding the recitals of such judgments. In Marx v. Fore it was assumed that such judgments could be attacked directly, but not collaterally. Our later decisions hold that, on jurisdictional grounds, the judgment of a sister state may be assailed collaterally on evidence *dehors* the record, but a domestic judgment can be attacked on such ground in a direct proceeding only. On this point Stuart v. Dickinson, 290 Mo. 516, 235 S. W. 446, is analogous to the instant case. There, citing many cases, we held that a judgment, fair on its face, rendered in Illinois could be assailed for want of jurisdiction of the parties when offered in evidence by a defendant in a suit in this state. We approved the ruling of that case since in In re Estate of Thompson, 339 Mo. 410, 97 S. W. (2d) 93; Hall v. Wilder, 316 Mo. 812, 293 S. W. 760; Bonnet-Brown Co. v. Utt, 323 Mo. 589, 19 S. W. (2d)

888. The opinion in Wright v. Wright, 350 Mo. 325, 165 S. W. (2d) 870, is not inconsistent in result with Stuart v. Dickinson. The attack on the Nevada divorce in the Wright case was direct. However, in discussing other cases, we assumed that a judgment of a sister state, displaying no defect on its face, could not be attacked collaterally. We now approve the holding in Stuart v. Dickinson that such a judgment can be attacked collaterally for want of jurisdiction of the subject matter or parties. [31 Am. Jur., pages 193-4-5, sections 597-8; 34 C. J., page 1142, section 1616(c).]

"A judgment rendered in one state is subject to collateral attack in another state on the ground that the state in which the judgment was rendered had no jurisdiction over the defendant or over the subject matter, even though it appears in the judgment record that the court had jurisdiction and extrinsic evidence is necessary to establish its invalidity." [Restatement of the Law, "Judgments:" page 71, section 12(c).]

All the Missouri cases cited by appellant on this point, except Howey v. Howey (Mo.), 240 S. W. 450, involved attacks on domestic judgments. In the Howey case, while there was a rather weak attempt to attack a Florida judgment on jurisdictional grounds, the principal assault on the judgment was for alleged perjury at the trial in that state as to the plaintiff's residence, which question could not, of course, be raised collaterally. But the opinion does say that, while the Federal Constitution does not require it, the Missouri rule is to deny collateral attack upon a judgment of a sister state, which shows no defect on the record, even on jurisdictional grounds. That much of the opinion is contrary to Stuart v. Dickinson and other authorities, supra, which we think announce the sounder rule.

We hold that the finding of the Commission and the judgment of the circuit court in the instant case do not conflict with the "full faith and credit clause" of the Federal Constitution.

However, appellant in oral argument contended that a judgment for divorce is not governed by rules applicable to other judgments, and that the Kansas decree is not subject to attack in this state even in a direct proceeding, explaining this contention in this manner: a divorce action is a proceeding in rem; the res is the marriage status and, when the marriage is dissolved by the death of one of the contracting parties, no action affecting the res survives to the living spouse or against the heirs or representatives of the deceased spouse. Appellant finds support for this contention in some language used by Judge Woodson in the majority opinion in Lieber v. Lieber, 239 Mo. 1, l. c. 55, 143 S. W. 458, but we think the reasoning of Judge Woodson and of appellant rest upon an unsound premise. If a divorce suit is an action in rem the res is not a stationary or immovable thing. It travels with the parties and may even be divided and exist in separate states if the parties in good faith acquire

separate domiciles. A divorce case is not strictly in rem, but, of necessity, a state must have sufficient control over the marriage status of its residents to enable its courts to affect that status without personal service if such service cannot be obtained. However, due process requires that reasonable and good faith effort be made to notify the absent spouse. All this is clearly set forth in the able dissenting opinion of Judge Valliant in the Lieber case, supra.

In the instant case the appellant, Bridge Company, by accepting the Compensation Act, contracted to pay to the dependents of its employee, if he should die by accident in the course of his employment, a sum to be determined by the Compensation Commission in accordance with the Act. Claimant claims to be and, if the divorce is invalid, was the sole dependent of the deceased employee at his death. Of course, her right to compensation survived the death of her husband for it did not come into being until his death. To say that the very event which caused her right to accrue [her husband's death] precluded any remedy, would be to say her right died the instant it was born and from the same cause. That would be a reflection upon the law and a travesty upon justice. Nor is there any doubt that her right survived against the employer who made a contract with her husband for her benefit.

Appellant says that as the Compensation Commission is not a court recognized by our Constitution it was without power to pass upon the validity of the divorce decree. Claimant's counsel must have been troubled with this same doubt for after the claim was filed a suit was brought in the circuit court of Jackson County seeking to attack the divorce by declaratory judgment. The Bridge Company brought direct prohibition in this court; the case was lodged in Division Two and an opinion adopted forbidding the circuit court to proceed in the declaratory judgment suit. [State ex rel. v. Terte, 345 Mo. 95, 131 S. W. (2d) 587.]

Later the claimant sued in the circuit court of the City of St. Louis against the Bridge Company and the Compensation Commission, praying that the former be enjoined from offering, and the latter from receiving, the Kansas decree in evidence in the compensation case. Claimant lost in the circuit court and also on appeal to the St. Louis Court of Appeals. The latter court, after adopting a unanimous opinion, transferred the case to us because it believed its opinion in conflict with the opinion of the Kansas City Court of Appeals in Kelly v. Howard (Mo. App.), 123 S. W. (2d) 584. In Division One we adopted the opinion of the St. Louis Court of Appeals *verbatim*, adding a few comments of our own. [Leichty v. Kansas City Bridge Co. (Mo.), 162 S. W. (2d) 275.] In that case it was conceded that there were no facts making the City of St. Louis proper venue for suit against the Bridge Company unless the circuit court there had jurisdiction over the co-defendant, the Com-

pensation Commission. The opinion assumes, but does not decide, that the City of St. Louis was proper venue for a suit against the Commission because the law requires it to maintain an office there, but held that the petition failed to state a cause of action against the Commission. The opinion states that plaintiff's case was based upon the theory that the Commission had no power to pass upon the validity of the Kansas decree if and when it should be offered in evidence and, therefore, a court of equity should grant the relief prayed. Then the opinion goes on to say:

"In the case at bar the issue to be determined by the Commission is whether or not the claimant is the widow of Lewis Edwin Leichty. The Workmen's Compensation Commission has many times determined that issue in cases before it, where the determination involved the application of well-settled rules of law to facts found. De Ra Luis v. Carter Carburetor Co., Mo. App., 94 S. W. 2d 1130; Sanders v. Central Building Materials Co., Mo. App., 43 S. W. 2d 863; and Griggs v. Pullman Co., Mo. App., 40 S. W. 2d 463. In the case at bar the principles to be applied are found in the decisions which hold that in the absence of waiver a judgment is subject to collateral attack because of its rendition against one who never was legally served with process of the court. If the Commission finds the facts to be such as to bring the Kansas judgment under this rule, and applies the rule by excluding the document when offered, we do not believe the Commission will exceed its powers."

Then we held that the Commission has the authority to make the necessary rulings to determine the fundamental question of whether claimant is entitled to compensation.

We adhere to our ruling in the last mentioned case and hold that the Commissioner who first heard the claim had authority to inquire into the manner in which the divorce was obtained in order to determine the admissibility of the decree as evidence. True, before this evidence came in, the Commissioner admitted the decree, but this was only a tentative ruling. Later he ruled that the decree was obtained by fraud and this amounted to a rejection of the decree as evidence, which became a judicial ruling when affirmed by the circuit court.

We need say little on the remaining point relative to the sufficiency of the ▮▮▮▮ evidence. If believed it shows that deceased not only falsely swore as to his knowledge of his wife's residence, but took active steps to prevent her from knowing of the divorce suit. This was a violation of the requirement for due process under the Kansas statute and a fraud upon the court. We must assume that, if the facts were presented to the court which granted the divorce, the decree would not be recognized as valid. Certainly we are not required to recognize it.

The judgment is affirmed. All concur, except Ellison, J., absent.

ON MOTION FOR REHEARING.

CLARK, C. J.—In its motion for rehearing appellant contends that we erred: (1) in holding that the Kansas divorce decree is void because a false and fraudulent affidavit was made to secure an order of publication; (2) in holding the divorce decree was subject to collateral attack.

In support of the first contention appellant cites the following Kansas decisions: Larimer v. Knoyle, 43 Kan. 338; McCormick v. McCormick, 82 Kan. 31, 107 Pac. 546; Brumbaugh v. Wilson, 82 Kan. 53, 107 Pac. 792; Martens v. Green, 113 Kan. 142, 213 Pac. 642; Davis v. Vinson Land Campany, 76 Kan. 27, 90 Pac. 766; Marler v. Stewart Farm Mortgage Company, 111 Kan. 488, 207 Pac. 823; and Blair v. Blair, 96 Kan. 757.

All those cases are distinguishable from the instant case. All of them except the McCormick case involved domestic judgments, that is, judgments previously rendered by Kansas courts and later attacked in the courts of the same state. In the McCormick case the parties had married in Kansas, later moved to Missouri and still later the wife returned to Kansas. The husband procured a decree of divorce in Missouri on service by publication, but also sent a copy of the petition to the wife's attorneys. She admitted that she had knowledge of the pendency of the divorce suit and the Supreme Court of Kansas stressed that fact in considering an appeal in a suit she brought for alimony.

The instant case involves more than a false affidavit to procure an order of publication. In suits against nonresidents the Kansas statute not only requires publication, but also that a copy of the petition be mailed to the defendant at his or her last known address or an affidavit be filed stating why that cannot be done. That is as much a part of the service as the publication. In the instant case, as pointed out in our original opinion, there was evidence that the plaintiff in the divorce suit made a false affidavit to procure publication and also, despite the fact that he was in correspondence with his wife in Oklahoma, sent a copy of the petition to a friend in Texas with the request that she return it and state she did not know the wife's location, so she could not cause trouble in the suit. If true, that was an active obstruction of one of the "due process" requirements of the statute. Suppose he had obstructed the other requirement and procured a false affidavit that the order had been published when it had not; would any court hold that jurisdiction had been acquired? We think not, nor do we think that any court would so hold under the facts of the instant case. Certainly no such facts were shown in any case cited by appellant.

On its other contention, that the divorce decree was not subject to collateral attack, appellant cites Lieber v. Lieber, 239 Mo. 1,

638

143 S. W. 458, and Howey v. Howey (Mo.), 240 S. W. 450. Both those cases were reviewed in our original opinion and shown to be out of harmony with our later cases which follow Stuart v. Dickinson, 290 Mo. 516, 235 S. W. 446. As the Lieber and Howey cases were decided by the court en banc and our original opinion was rendered in division, we transferred the instant case to banc.

In addition to the authorities cited in our original opinion on this point we are sustained by Williams v. North Carolina, 65 Sup. Ct. Rep. 1092, l. c. 1095.

The motion for rehearing is overruled.