NATIONAL-BEN FRANKLIN FIRE INSURANCE COMPANY, A PENNSYLVANIA CORPORATION, AND MERCURY INSURANCE COMPANY, A MINNESOTA CORPORATION, PLAINTIFFS-RESPONDENTS, v. CAMDEN TRUST COMPANY, A CORPORATION OF NEW JERSEY, AND ASSOCIATED REALTIES CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued January 9, 1956—Decided February 20, 1956.

*Mr. James N. Butler* argued the cause for the appellants (*Messrs. Moore, Butler & McGee,* attorneys).

*Mr. William T. Wachenfeld* argued the cause for the respondents (*Messrs. Lum, Fairlie & Foster,* attorneys; *Mr. Vincent P. Biunno* on the brief).

The opinion of the court was delivered by

JACOBS, J. The Appellate Division, in an opinion reported at 36 *N. J. Super.* 249 (1955), reversed the Chancery Division's judgment which dismissed the plaintiffs' complaint for declaratory relief. We granted certification under *R. R.* 1:10–2.

The defendant Associated Realties Corporation is the owner of the Million Dollar Pier located at 2100-2114 Boardwalk, Atlantic City, and the ·defendant Camden Trust Company holds a $601,000 fourth mortgage on the property in trust for bondholders. In 1949 the pier was damaged by fire and thereafter the Trust Company instituted an action in the Law Division against the National-Ben Franklin Fire Insurance Company and the Mercury Insurance Company on fire insurance policies which they had issued naming Associated Realties as assured and the Trust Company as one of the mortgagees. The insurance companies denied liability as to the owner Associated Realties which was not joined as a

party in the Trust Company's action. They did not deny liability to the Trust Company as mortgagee but sought subrogation in a form which the Trust Company had rejected. In due course the Law Division found that the insurance companies had the right to subrogation but that such right was not equal with but junior to the mortgagee's or trustee's, and that they were "entitled to be paid their money after the mortgagee or trustee is paid its claim in full." On July 19, 1951 Judge Woods formally ordered and adjudged that the Trust Company have judgment against the National-Ben Franklin Fire Insurance Company in the sum of $8,133.51 (with interest) and against the Mercury Insurance Company in the sum of $2,623.70 (with interest) and that the insurance companies were entitled to receive an assignment of an interest in the Trust Company's bond and mortgage but that said assignment "shall be junior in lien and right of collection to the rights" of the Trust Company therein. On February 15, 1952 the Trust Company executed an assignment to the insurance companies which acknowledged receipt of payment from the insurance companies and provided that the assignment was subject to the conditions set forth in the judgment entered in the Law Division.

On October 2, 1954 the insurance companies filed a complaint in the Chancery Division in which they set forth the foregoing facts, claimed that they were entitled "to the rights and status of bondholders" under the mortgage held by the Camden Trust Company which had refused to recognize them as such, and sought a declaratory judgment. On October 21, 1954 the Trust Company and Associated Realties filed notice that they would apply for an order dismissing the complaint on the grounds that "the matters and things therein alleged have already been adjudicated by a court of competent jurisdiction, and further, that said complaint shows upon its face no grounds for the relief therein demanded." An affidavit by Mr. John S. Foster, a member of the firm of attorneys representing the insurance companies, was submitted in opposition to the motion. Mr. Foster stated that he had advised the insurance companies that although their rights

were " 'junior in lien and right of collection' " they still had the status and rights of bondholders and that the Trust Company had refused to recognize that they had "any rights or status at all to enforce or protect their lien on the property as set forth in the assignment." In passing upon the motion the Chancery Division expressed the view that a declaratory judgment proceeding is ordinarily not maintainable "where another remedy is at hand"; that the insurance companies were seeking "a correction, modification, clarification or amendment" of the Law Division judgment; that application for such relief "should be there made as a step in that cause"; and that since there was "another adequate remedy available to the plaintiffs as a step in the original cause" the motion to dismiss should be granted. See 33 *N. J. Super.* 340, 343 (*Ch. Div.* 1954). In reversing the Chancery Division's dismissal of the complaint, the Appellate Division expressed the view that a declaratory judgment would be as effective "as any other remedy for the purpose of disposing of the controversy now raised in the Chancery Division action"; and although it recognized that "usually when a declaratory judgment is sought as to a prior judgment of the Law Division, the declaratory action should be brought in that Division," it noted that here the relief sought was "primarily equitable" and maintainable in the Chancery Division. See 36 *N. J. Super.* 249, 255 (1955).

Although the declaratory judgment may be traced to Roman law, its development in England during the 19th Century undoubtedly supplied the model for the remedy in this country. *Cf.* 6 *Moore's Federal Practice* (2d ed. 1953), 3004; *Borchard, Declaratory Judgments* (2d ed. 1941), 87 *et seq.* Declaratory judgment statutes were enacted in Rhode Island as early as 1876 and in Maryland in 1888, but the first really effective enactment in the United States seems to have been our own 1915 statute relating to the Court of Chancery. See *L.* 1915, *c.* 116, *p.* 185; *Borchard, supra,* 132; 1 *Anderson, Declaratory Judgments* (2d ed. 1951), 25. In 1922 the Commissioners on Uniform State Laws adopted the now well-known Uniform Declaratory Judgments Act which

was later enacted by New Jersey and most of the other states. *L.* 1924, *c.* 140 (*R. S.* 2:26–66; *N. J. S.* 2A:16–50); *Note, Developments in the Law—Declaratory Judgments,* 62 *Harv. L. Rev.* 787 (1949). It contained express provision that the court shall have power to declare rights, status and other legal relations "whether or not further relief is or could be claimed," and that "further relief based on a declaratory judgment may be granted whenever necessary or proper." See *N. J. S.* 2A:16–52; *N. J. S.* 2A:16–60. It also provided that since it was remedial in nature it was to be "liberally construed and administered," although the court was given discretionary power to deny declaratory relief which would not terminate the uncertainty or controversy giving rise to the proceeding." *N. J. S.* 2A:16–51; *N. J. S.* 2A:16–61.

Despite the sweep of the statutory language the early cases displayed some reluctance to grant declaratory relief where a more traditional remedy was available. Professor Borchard strongly criticized this attitude, suggesting that where a litigant sought milder relief in the form of a declaration that he had been wronged there was no social justification for compelling him to seek more coercive relief such as an injunction, foreclosure or damages; as he put it, "the willingness to invoke arbitration and declaration of rights instead of hostilities and coercion is a mark of civilization and should be encouraged, not discouraged." *Borchard, supra,* 342. See also 1 *Anderson, supra,* 395. Although many courts accepted Borchard's approach and refused to deny declaratory relief simply because another remedy was available, the New Jersey decisions which were rendered under our former judicial system seemingly adopted a contrary course. See *Empire Trust Co. v. Board of Commerce and Navigation,* 124 *N. J. L.* 406 (*Sup. Ct.* 1940); *Provident Mutual Life Ins. Co. v. Unemployment Compensation Commission of New Jersey,* 126 *N. J. L.* 348 (*E. & A.* 1941); *Griffiths v. Griffiths,* 142 *N. J. Eq.* 751 (*E. & A.* 1948). *Cf.* 1 *Anderson, supra,* 385. When the *Federal Rules of Civil Procedure* were promulgated the issue was effectively disposed of in *Rule* 57 which provided that the existence of another remedy should not bar

declaratory relief. See *Moore, supra,* 3001. Our own practice rules did not deal with the matter until 1955, although in the meantime the Appellate Division had rendered its decision in *Utility Blade & Razor Co. v. Donovan,* 33 *N. J. Super.* 566 (1955). There Judge Clapp, relying upon our recent decision in *Carls v. Civil Service Commission of New Jersey,* 17 *N. J.* 215 (1955), and its approving reference to *Borchard, supra,* 303, held that declaratory relief is not to be denied simply because other relief is available, although a court might, in the proper exercise of its discretion, deny such relief if it satisfactorily appeared that the other relief would be *more* effective. Although the *Utility Blade & Razor* case never reached this court it was shortly followed by our promulgation of *R. R.* 4:92A (modeled after *Federal Rule* 57) which is now in effect and reads as follows:

"The procedure for obtaining a declaratory judgment pursuant to *N. J. S.* 2A:16–50 to 62, inclusive, shall be in accordance with the rules governing civil actions generally, and the right to trial by jury may be demanded under the circumstances and in the manner provided in *Rules* 4:39 and 4:40. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

Since the adoption of the Constitution of 1947 and the establishment of our new court system there fortunately has been but little evidence of any continuing judicial hostility to the use of the declaratory form of relief. See *New Jersey Turnpike Authority v. Parsons,* 3 *N. J.* 235 (1949); *Blackman v. Iles,* 4 *N. J.* 82 (1950); *Abbott v. Beth Israel Cemetery Ass'n of Woodbridge,* 13 *N. J.* 528 (1953). The Superior Court is in nowise confronted with the jurisdictional problems which were presented under the former separation between law and equity; all divisions of the Superior Court have jurisdiction to grant declaratory relief, and if perchance the proceeding is brought in the wrong division, that alone would not constitute cause for dismissal as distinguished from transfer. *Cf. R. R.* 4:41–2; *R. R.* 4:41–3; *O'Neill v. Vreeland,* 6 *N. J.* 158, 169 (1951); *Abbott v. Beth Israel Cemetery Ass'n of Woodbridge, supra,* 13 *N. J.,* at *page* 539.

Similarly, the availability of other relief and the failure to seek it would not suggest dismissal of the complaint (*R. R.* 4:92*A; N. J. S.* 2*A*:16–52), although the trial court in a suitable case might well permit or direct an amendment where such course would avoid splitting the controversy with ensuing multiple actions. The policy considerations which may be advanced in favor of proceedings limited to declaratory relief will oftentimes have to be carefully weighed by the trial court in the light of the modern concept that the sound administration of justice will generally be served better by disposing of all matters in controversy between the parties at one time and place. See *New Jersey Highway Authority v. Renner,* 18 *N. J.* 485, 492 (1955) ; *Massari v. Einsiedler,* 6 *N. J.* 303, 313 (1951). *Cf. Note, Declaratory Judgment and Matured Causes of Action,* 53 *Col. L. Rev.* 1130 (1953). Under *N. J. S.* 2*A*:16–61 the trial court always retains its discretionary power to refuse to enter a declaratory judgment which does not terminate the uncertainty or controversy giving rise to the proceeding (*cf. Proprietary Ass'n v. Board of Pharmacy of New Jersey,* 16 *N. J.* 62, 71 (1954)) ; but, even here, amendment rather than dismissal of the complaint would be indicated in particular instances where the entire controversy between the parties would thus be brought before the court for complete and final disposition. See *Note,* 62 *Harv. L. Rev., supra,* 826–828.

In the instant matter the insurance companies may not and do not question the validity of the Law Division judgment which directed that the assignment shall be junior in lien and right of collection. They seek a construction of the judgment and the assignment to settle a dispute as to their meaning. The insurance companies contend that they have the status of bondholders, although they expressly acknowledge that their rights are junior in lien and right of collection to the rights of the Trust Company; on the other hand, the Trust Company has refused to recognize or grant the insurance companies the rights of bondholders (junior or otherwise) and "refuses to grant or admit that they have

any rights or status at all to enforce or protect their lien on the property as set forth in the assignment." At the oral argument it was represented that when counsel for the insurance companies wrote to the Trust Company inquiring as to the status of the mortgage and the efforts being taken to satisfy it they were denied all information on the ground that they were strangers thereto. Under the circumstances it seems clear that a *bona fide* controversy has arisen between the parties within the contemplation of the Declaratory Judgments Act; and the fact that it primarily involves an earlier judgment which left room for construction should not restrict the applicability of the act. See *Borchard, supra,* 356; *Note, Validity and Effect of Former Judgment or Decree as Proper Subject for Consideration in Declaratory Action,* 154 *A. L. R.* 740, 745 (1945). Since the earlier judgment was in the Law Division, the application for its construction should have been made there where both legal and equitable powers could be exercised; seemly procedure dictated that course, and the Chancery Division might well have transferred the cause on its own motion when the circumstances were first made apparent. Nevertheless, the Superior Court had jurisdiction and in view of the death of the Law Division judge who entered the original judgment there would now seem to be no persuasive reason for declining to entertain the proceeding in the Chancery Division.

The Trust Company stresses its contention that if the insurance companies really wish to enforce their assignment rights they should be compelled to do so through a more traditional mode such as foreclosure. But the insurance companies point out that once their status is judicially established and recognized by the Trust Company there may well be no need or occasion for coercive proceedings entailing considerable delay and expense; indeed, even in such proceedings the court would presumably be called upon to determine the preliminary question relating to the proper status of the insurance companies. Under all of the circumstances, we are satisfied that the interests of justice dictate that the Chancery Division retain and proceed expeditiously with the

plaintiffs' action for declaratory relief; if in the course thereof it fairly appears necessary or appropriate that issues relating to claims for additional relief be passed upon, the complaint may readily be amended to include them, thereby largely avoiding the undesirable incidents of plural actions.

Affirmed.

HEHER, J. (concurring). Under the doctrine of *res judicata*, the judgment entered in the Law Division of the Superior Court on July 19, 1951 is conclusive of the rights of the parties and their privies in the matters of law and fact at issue, not only such matters actually litigated and determined, but also those properly determinable in the action. *Hudson Transit Corporation v. Antonucci*, 137 *N. J. L.* 704 (*E. & A.* 1948). So much is conceded. There was no appeal from the judgment. Public policy and the private rights of the litigants ordain that there be an end to litigation. Were it not for this principle, litigation would be endless. And it would seem to be axiomatic that there would be no occasion for a declaration of the rights of the parties under this judgment by means of the Declaratory Judgments Act, *N. J. S.* 2A:16–50 *et seq.*, if the remedy sought were the enforcement by foreclosure or otherwise of the liens established by the judgment, for a plenary suit to that end would provide full relief, and a mere declaration of rights under the statute now invoked, to be followed by executorial process in another action in a court where an adequate remedy could be had, would constitute the piecemeal method of litigating private rights that is alien to the genius and spirit of our constitutional judicial procedure.

But the plaintiff insurers are not seeking the satisfaction of their right of subrogation by foreclosure of their liens and sale of the lands to which they have attached, but rather the protection of their right thus established by the judgment until the rendering of what is due becomes a practical measure.

The pier property is encumbered by a first mortgage of $68,000, covering other premises as well, held by the Provident

Mutual Life Insurance Company; second and third mortgages aggregating $73,500, also embracing other premises, and then comes the indenture of trust mortgage of $601,000, securing a ten-year bond issue. The bonds have been in continuous default both as to principal and interest since April 1, 1939; all the interest charges on the prior mortgages have been paid, and there are no tax arrears. Apparently, all parties have adopted a waiting policy in the hope that time would bring the economic rehabilitation that would provide for the bonds a security that has long been non-existent in fact, or largely so. Foreclosure now would not serve the purposes of the plaintiff insurers. But they have an interest in the *res* to be shielded meanwhile; and a declaratory judgment to that end would serve the traditional concept of that process, "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *N. J. S.* 2A:16–51.

It is time enough to deal with other and different circumstances as and when the occasion arises. Can it be that one may invoke the declaratory judgment process to adjudicate the right, intending forthwith to bring another action in another court for execution of the judgment? That would make a fetish of the declaratory proceeding. It would be violative of the well-settled principle of one legal proceeding for the enforcement of an accrued cause of action. The avoidance of unnecessary multiple actions is basic to our new procedural process; indeed, it had recognition under the old constitutional system. The Declaratory Judgments Act makes no provision for the execution of judgments entered under its provisions, save that "Further relief based on a declaratory judgment may be granted whenever necessary or proper, by application to a court having jurisdiction to grant the relief." *N. J. S.* 2A:16–60.

The act can operate only within the framework of the Constitution. For example, the prerogative writ jurisdiction vested in the old Supreme Court, as the successor of the King's Bench, by the 1844 Constitution was thus put beyond legislative impairment. *State v. Court of Common Pleas,* 1

*N. J.* 14 (1949) ; *Stale, Dufford, Prosecutor v. Decue*, 31 *N. J. L.* 302 (*Sup. Ct.* 1865) ; *Traphagen v. Township of West Hoboken*, 39 *N. J. L.* 232 (*Sup. Ct.* 1877) ; *Green v. Mayor, etc., of Jersey City*, 42 *N. J. L.* 118 (*Sup. Ct.* 1880). The Supreme Court was the "sole depositary" of the prerogative writs of *certiorari, mandamus,* and *quo warranto* ; the "distinguishing feature of the King's Bench was the authority which it alone exercised by means of the writs of *certiorari, mandamus* and *quo warranto,*" and the 1844 Constitution "was framed to perpetuate in our Supreme Court the same ample and exclusive power \* \* \*." *Flanagan v. Treasurer of City of Plainfield*, 44 *N. J. L.* 118 (*Sup. Ct.* 1882). For instance, the title to an office was triable only by a writ in the nature of *quo warranto. Finnegan v. Miller,* 132 *N. J. L.* 192 (*Sup. Ct.* 1944) ; *Duncan v. Board of Fire and Police Commissioners of City of Paterson,* 131 *N. J. L.* 443 (*Sup. Ct.* 1944). And at common law the remedy for dissolution of a corporation is by *quo warranto. In re Collins-Doan Co.,* 3 *N. J.* 382 (1949).

But there is no occasion to go on. It suffices to say that the declaratory judgment was designed to enlarge the early common-law conception of the judicial process as a means of remedying an actual violation of personal or private rights; and that, ordinarily, there is no occasion for invoking the measure where there is a wholly adequate remedy in the usual course of a plenary suit for the prosecution of a cause of action that has reached the stage of enforcement, and such is the relief sought. *In re Cryan's Estate,* 301 *Pa.* 386, 152 *A.* 675 (*Sup. Ct.* 1930), 71 *A. L. R.* 1417; *De Charette v. St. Matthews Bank & Trust Co.,* 214 *Ky.* 400, 283 *S. W.* 410 (*App. Ct.* 1926), 50 *A. L. R.* 34; *Travelers' Insurance Co. v. Greenough,* 88 *N. H.* 391, 190 *A.* 129 (*Sup. Ct.* 1937), 109 *A. L. R.* 1096; *State ex rel. Kansas City Bridge Co. v. Terte,* 345 *Mo.* 95, 131 *S. W.* 2d 587 (*Sup. Ct.* 1939), 124 *A. L. R.* 1331; *Brindley v. Meara,* 209 *Ind.* 144, 198 *N. E.* 301 (*Sup. Ct.* 1935), 101 *A. L. R.* 682. The act is not contrived to provide a substitute for other regular actions. *Washington-Detroit Theatre Co. v. Moore,* 249 *Mich.* 673,

229 *N. W.* 618 (*Sup. Ct.* 1930), 68 *A. L. R.* 105. See 142 *A. L. R.* 11, as to the federal act; also 87 *A. L. R.* 1211, 1220; 172 *A. L. R.* 848. The basic purpose of a declaratory action is a timely determination and protection of the right to avert the risk of delay pending action in the normal course that is conditioned upon the accrual of an enforceable cause of action, and the avoidance of a multiplicity of suits. There may be danger of loss before maturity of the cause of action; and delay by the adversary party in bringing action may have prejudicial consequences. In a word, the question would seem to be whether the declaratory proceeding will serve the interests of essential justice in the circumstances of the particular case; and the case for such relief here meets that test. Such seems to be the current of authority, a consideration of prime importance in assessing a statute intended to achieve uniformity in the law. Our rule, *R. R.* 4:92A, does not have a different significance.

For these reasons, I concur in the affirmance of the judgment.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—None.