262 N.J. Super. 34 (1993)
619 A.2d 1031
BRENDA KATTOURA, PLAINTIFF,
v.
GHANSHYAN G. PATEL AND MAROUN KATTOURA, DEFENDANTS, AND RICHARD A. NORMANDO, DEFENDANT-APPELLANT-CROSS-RESPONDENT. AND HERTZ PENSKE TRUCK LEASING, INC., DEFENDANT-THIRD PARTY PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
KANDALL FABRICATING & SUPPLY CORP., THIRD PARTY DEFENDANT-FOURTH PARTY PLAINTIFF-APPELLANT-CROSS-RESPONDENT,
v.
AMERICAN MOTORISTS INSURANCE COMPANY, FOURTH PARTY DEFENDANT-FIFTH PARTY PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
EXCELSIOR INSURANCE COMPANY, FIFTH PARTY DEFENDANT-APPELLANT-CROSS-RESPONDENT, AND AETNA CASUALTY AND SURETY COMPANY, FIFTH PARTY DEFENDANT. MAROUN KATTOURA, PLAINTIFF,
v.
RICHARD A. NORMANDO, DEFENDANT-APPELLANT-CROSS-RESPONDENT. AND HERTZ PENSKE TRUCK LEASING, INC., DEFENDANT-THIRD PARTY PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
KANDALL FABRICATING & SUPPLY CORP., THIRD PARTY DEFENDANT-FOURTH PARTY PLAINTIFF-APPELLANT-CROSS-RESPONDENT,
v.
AMERICAN MOTORISTS INSURANCE COMPANY, FOURTH PARTY DEFENDANT-RESPONDENT-CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1992.
Decided February 2, 1993.
*37 Before Judges DREIER,[1] SKILLMAN and VILLANUEVA.
William J. Pollinger argued the cause for appellants-cross-respondents (Pollinger & Fearns, attorneys; Mr. Pollinger, of counsel; Mr. Pollinger and John A. Fearns, on the brief).
Kieran P. Hughes argued the cause for respondents-cross-appellants (Bumgardner, Hardin & Ellis, attorneys; Mr. Hughes, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Hertz Penske Truck Leasing (Penske) is in the business of leasing trucks. It carried an insurance policy on its fleet with American Motorists Insurance Company (AMI), which provided *38 minimal liability coverage that was excess to the primary coverage Penske's lease customers were required by agreement to carry on leased vehicles.
Penske leased a truck to Kandall Fabricating & Supply Corp. (Kandall). The lease obligated Kandall to indemnify Penske from any claims, expenses and liabilities arising from the operation of the leased vehicle. In addition, the lease obligated Kandall to provide $500,000 of liability coverage for Kandall and Penske in connection with the operation of the leased vehicle. The lease required this coverage to be "primary and not excess or contributory."
In conformity with this lease obligation, Kandall secured a liability policy with Excelsior Insurance Company (Excelsior). This policy provided "primary insurance" for any "covered auto." The policy further provided that "[a]ny leased auto designated or described in this endorsement will be considered a covered auto you own and not a covered auto you hire or borrow" and that "[f]or a covered auto which is a leased auto WHO IS INSURED is changed to include as an insured the lessor named in this endorsement." Excelsior also issued a certificate of insurance to Penske listing it as an additional insured under the policy.
On December 18, 1987 Richard A. Normando (Normando), an employee of Kandall, was involved in a two-vehicle accident while driving the truck leased from Penske. The driver and a passenger in the other vehicle, Maroun and Brenda Kattoura, began separate suits for their personal injuries allegedly suffered in the accident. Thereafter, third-party complaints and cross-claims were filed, primarily raising questions regarding insurance coverage, and Excelsior and AMI became parties to the actions. Excelsior provided a defense to the Kattouras' personal injury actions for Normando and Kandall, and AMI provided a defense for Penske. The court granted summary judgment in favor of Penske, and Excelsior eventually settled the underlying personal injury actions on behalf of Normando and Kandall for a total of $23,750.
*39 AMI subsequently moved for summary judgment on the coverage issue. The trial court ruled that the clause in AMI's policy that purported to make its policy excess to any primary insurance of the lessee was an illegal "escape" clause. It, therefore, found the Excelsior and AMI policies to be co-primary. The trial court apportioned fiscal responsibility between the companies based on a provision in the Excelsior policy that limited its share of liability to the "proportion that the limit of [its] policy bears to the total of the limits of all the policies covering on the same basis," which was found to be 97% of the total settlements. Finally, the trial court concluded that under the indemnification clause of the lease between Penske and Kandall, Kandall, through its insurer Excelsior, was responsible for any loss incurred by Penske.[2]
Normando, Kandall and Excelsior appealed from the portion of the trial court's order that requires Kandall, through Excelsior, to hold Penske harmless; Penske and AMI filed a cross-appeal from the portion of the order that held the AMI policy to be co-primary.
We conclude that the Excelsior policy provided primary coverage to Normando, Kandall and Penske, and that AMI's coverage was secondary only. We further conclude that there is no statutory provision or other expression of public policy precluding enforcement of the Excelsior and AMI policies as written. Accordingly, Excelsior is liable for the full amount of the judgments in the underlying tort actions and for all the defense costs of all the insureds.
*40 Preliminarily, we note that the order from which this appeal was taken is interlocutory. The order adjudicates coverage for the accident and the liability of Excelsior and AMI for the judgments and defense costs. However, it does not reduce that liability to a judgment for a specific sum of money. Instead, the order requires "Kendall Fabricating, through its insurer, Excelsior Insurance Company, [to] indemnify and hold Hertz Penske harmless for any damages, expenses, and liabilities arising from the operation of the truck, as well as the expenses incurred in the defense of plaintiffs' actions for bodily injury, including all reasonable costs, expenses, and attorney's fees expended by American Motorists and Hertz Penske in defense of the personal injury claims...." Thus, this order leaves open the possibility of further litigation regarding the amount of "reasonable" costs, expenses and attorney's fees expended by AMI and Penske. Furthermore, AMI filed a fifth party complaint against Aetna Casualty and Surety Company, which apparently was never adjudicated.
An order generally must dispose of all issues as to all parties to be a final judgment. Hudson v. Hudson, 36 N.J. 549, 553, 178 A.2d 202 (1962). Therefore, an order which adjudicates a liability for counsel fees and litigation expenses, but not the amount of the obligation, is only interlocutory and hence not appealable as of right. See In re Estate of Johnson, 240 N.J. Super. 134, 136, 572 A.2d 1163 (App.Div. 1990). An order which fails to adjudicate the liability of a party is likewise not a final judgment. Healey v. Township of Dover, 208 N.J. Super. 679, 681, 506 A.2d 824 (App.Div. 1986).
Although this appeal is thus subject to dismissal as interlocutory, the merits have been fully briefed and the parties have urged us to decide the basic coverage issue. Therefore, pursuant to Rule 2:4-4(b)(2), we grant leave to appeal nunc pro tunc as to both the appeal and cross-appeal.
This appeal involves the interpretation of N.J.S.A. 45:21-1 to -11, which require a motor vehicle rental agency to *41 maintain liability insurance coverage on its vehicles. The coverage must be in the amount of $10,000 for an accident resulting in injury to any one person and $20,000 for an accident resulting in injury to more than one person. N.J.S.A. 45:21-3.[3] This coverage must be provided not only to the owner of the leased vehicle but also the lessee and his agents. Ibid. The purpose of this legislation, like other motor vehicle responsibility laws, is "to assure compensation to the innocent victims of negligently driven automobiles." Williams v. American Home Assurance Co., 121 N.J. Super. 351, 361, 297 A.2d 193 (App.Div. 1972), certif. denied, 62 N.J. 260, 300 A.2d 344 (1973); accord Cosmopolitan Mut. Ins. Co. v. Continental Casualty Co., 28 N.J. 554, 557, 147 A.2d 529 (1959); General Accident Group of Ins. Co. v. Liberty Mut. Ins. Co., 191 N.J. Super. 530, 535, 468 A.2d 430 (App.Div.), certif. denied, 95 N.J. 192, 470 A.2d 416 (1983). Consequently, this legislation does not preclude the lessor and lessee of a rented vehicle, and their insurance companies, from agreeing that the insurance coverage of one party shall be primary and the other excess, so long as the agreement preserves the statutorily mandated protection extended to any injured party. See Cosmopolitan Mut. Ins. Co. v. Continental Casualty Co., supra, 28 N.J. at 563, 147 A.2d 529; General Accident Group of Ins. Co. v. Liberty Mut. Ins. Co., supra, 191 N.J. Super. at 535, 468 A.2d 430. Kandall's policy with Excelsior, which afforded more than sufficient coverage to pay the full amount of the judgments obtained by the Kattouras, provided this statutorily mandated protection. Therefore, N.J.S.A. 45:21-3 provides no basis for imposing responsibility upon AMI for any portion of the judgment or defense costs.
*42 Excelsior relies upon Cosmopolitan Mut. Ins. Co. v. Continental Casualty Co., supra, in arguing that its coverage and the coverage provided by AMI were "co-primary" and that both insurers therefore have responsibility for the judgment and defense costs. However, in that case both a car rental company and its lessee had automobile liability policies which purported to provide "excess" coverage. The Court held that the conflict created by these coverage provisions would be resolved by treating both coverages as primary and requiring both insurers to share in the costs of the settlement and litigation expenses:
[B]oth policies provide that they shall be "excess" insurance. However, it is obvious that there can be no "excess" insurance in the absence of "primary" insurance. Since neither policy by its terms is a policy of "primary" insurance, neither can operate as a policy of "excess" insurance. The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses.

[Id. 28 N.J. at 562, 147 A.2d 529.]
The conflict generated by insurance policies which both purport to provide secondary coverage is absent in this case. Excelsior's policy provided primary coverage to both Kandall and Penske, and AMI's policy provided secondary coverage.[4] Therefore, the policy provisions are not, as in Cosmopolitan Mut. Ins. Co. v. Continental Casualty Co., supra, 28 N.J. at 562, 147 A.2d 529, "mutually repugnant," and there is no need to treat AMI's coverage as "primary" to resolve an inconsistency in coverages.
*43 The Court in Cosmopolitan Mut. Ins. Co. v. Continental Casualty Co., supra, also rejected the argument, again advanced by Excelsior in this case, that N.J.S.A. 45:21-1 et seq., which requires a car rental company to maintain liability coverage for persons suffering damage by reason of the operation of its motor vehicles, requires such coverage to be primary rather than secondary:
The fact that [the motor vehicle rental company] is required by statute to furnish insurance protection does not militate against our conclusion. The statute, N.J.S.A. 45:21-1 et seq., requires that one engaged in the business of renting motor vehicles shall file with the clerk of the municipality where he resides or has his place of business a policy of liability insurance for the benefit of persons suffering loss or damage by reason of the operation of such motor vehicles.... The purpose of the statute is to protect the public from the irresponsibility of persons operating hired motor vehicles on our highways. Clearly, when [the rental company] obtained liability insurance (in this case in a greater amount than the statutory requirement) and filed its policy with the municipality, the interest of the public was secured. The statute does not require that a policy issued in compliance therewith be primary insurance.... The question of whether the particular insurance is primary or excess is not a public matter but merely a concern of the insurance companies which have extended coverage to the risk.

[Id. at 563, 147 A.2d 529; emphasis added.]
Thus, Cosmopolitan directly supports our conclusion that the provisions of the AMI policy making its coverage "excess" are valid where expressly agreed to by Excelsior, and that Excelsior is responsible for the full amount of the judgment and all defense costs.
*44 Excelsior also relies upon Rao v. Universal Underwriters Ins. Co., supra, 228 N.J. Super. 396, 549 A.2d 1259, which involved the effect of a provision in a policy issued to an automobile leasing company which provided coverage to lessees in the amount required by law but only in the event the lessee failed to maintain coverage. The lessee in that case obtained its own automobile liability policy, which provided $100,000 of coverage. The lessee was involved in a serious accident, as a result of which the injured party filed a claim that apparently could not be settled for an amount within the lessee's policy limits. Consequently, the lessee filed a declaratory judgment action seeking coverage under the lessor's policy. A panel of this court held that the provision in the lessor's policy excluding coverage for the lessee if the lessee secured its own policy was an invalid "escape clause." Id. at 399-404, 549 A.2d 1259. However, the panel also held that the effect of invalidation of the "escape clause" was solely to require the lessor's insurer to extend the minimum statutory coverage to the lessee. Id. at 404-12, 549 A.2d 1259. Moreover, nothing the Rao panel said would preclude enforcement of a policy provision making the statutorily mandated coverage under the lessor's policy excess to primary coverage expressly agreed to by the lessee's insurer. In this case, unlike in Rao, the coverage provided under the lessee Kandall's policy with Excelsior was more than sufficient to satisfy the full amount of the injured parties' claims. Therefore, our conclusion that Excelsior is solely responsible for the judgment and defense costs does not conflict with Rao.
Since Excelsior is responsible under the policy it issued to Kandall for the full amount of the judgments in favor of the Kattouras and all defense costs, it is unnecessary for us to decide AMI's and Penske's alternative argument that Kandall was required under the indemnification clause of the rental agreement to indemnify Penske for any liability or defense expenses incurred as a result of the operation of the leased vehicle. However, we note that the indemnification obligation assumed by Kandall under paragraph 10 of the lease, to "... *45 protect, defend, indemnify and hold harmless Penske, and its agents, servants and employees from any and all claims, suits, costs, damages, expenses and liabilities arising from ... the use, selection, possession and/or operation of the vehicle ...," is expansive and unambiguous. We perceive no reason why this obligation would not extend to any liability or litigation expenses which Penske may have incurred as a result of the accident between the Kattoura car and the leased truck.
Accordingly, we reverse the first and second decretal paragraphs of the trial court's order of June 20, 1991, and affirm the third decretal paragraph as modified by this opinion. The case is remanded to the trial court for further proceedings in conformity with this opinion.
NOTES
[1] Although Judge Dreier did not participate in oral argument, the parties consented to his participation in the decision.
[2] As the parties acknowledged at oral argument, the trial court's conclusion that the lease obligates Kandall, through Excelsior, to indemnify Penske for any loss it suffered as a result of the accident, would require Excelsior to pay the full amount of the judgments and all defense costs incurred on behalf of both Kandall and Penske. Therefore, if the trial court's interpretation of the indemnification clause of the lease is correct, AMI would have no liability for the judgments or defense costs even if the trial court had correctly held that the coverage provided by AMI's policy is "co-primary."
[3] In Rao v. Universal Underwriters Ins. Co., 228 N.J. Super. 396, 400 n. 2, 549 A.2d 1259 (App.Div. 1988), the court suggested that the $10,000 per person, $20,000 per accident coverage for bodily injury which N.J.S.A. 43:21-3 requires for leased vehicles was increased by the subsequent enactment of the New Jersey No Fault Law, N.J.S.A. 39:6B-1 to -3, to $15,000 per person, $30,000 per accident. Since we conclude that AMI has no liability for the judgments secured by the Kattouras, we have no occasion to consider this issue.
[4] At oral argument, Excelsior argued that the AMI policy provided excess coverage only to Penske and not to Kandall, and thus contained an invalid "escape clause" comparable to the one invalidated in Rao v. Universal Underwriters Ins. Co., supra, 228 N.J. Super. 396, 549 A.2d 1259; see also Selective Ins. Co. v. Charter Risk Retention Group Ins. Co., 261 N.J. Super. 1, 617 A.2d 664 (App.Div. 1992). However, Excelsior did not present this argument to the trial court or in its appellate brief. Therefore, it is not properly before us. Whitfield v. Blackwood, 101 N.J. 500, 504, 502 A.2d 1132 (1986) (Clifford, J., concurring); Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973); In re Bloomingdale Convalescent Center, 233 N.J. Super. 46, 48 n. 1, 558 A.2d 19 (App.Div. 1989). In any event, even if the AMI policy failed to include the coverage required by N.J.S.A. 45:21-1 et seq., we would deem the policy amended to provide the minimum coverage required by the statute and to conform to the parties' agreement that the coverage provided by Excelsior would be primary. See Allstate Ins. Co. v. Malec, 104 N.J. 1, 6, 514 A.2d 832 (1986); Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373, 225 A.2d 570 (1966); Rao v. Universal Underwriters Ins. Co., supra, 228 N.J. Super. at 406, 549 A.2d 1259.