272 N.J. Super. 346 (1993)
639 A.2d 1154
THOMAS P. ROGERS, AND NEW JERSEY MANUFACTURERS INSURANCE COMPANY, PLAINTIFFS,
v.
SNAPPY CAR RENTAL, INC. AND PROGRESSIVE CASUALTY INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
Decided November 19, 1993.
*348 Florence Amato Scrivo, for plaintiffs (Evans, Hand, Allabough & Amoresano, attorneys).
Thomas J. Decker, for defendants (Schechner & Decker, attorneys).
MINIMAN, J.S.C.
The issue presented here for resolution is the effect to be given competing excess insurance clauses in two automobile liability insurance policies, one insuring the driver and the other insuring the driver and the car rental company. For the reasons stated hereafter, these mutually repugnant excess coverage clauses are inoperative and the insurances are consequently co-primary.
The facts material to these cross-motions for summary judgment are undisputed. On March 9, 1989, plaintiff Thomas P. Rogers ("Rogers") entered into a written rental agreement with defendant Snappy Car Rental, Inc. ("Snappy") covering a 1987 Plymouth Reliant automobile. On March 22, 1989, Rogers was involved in an automobile accident. The resulting lawsuit was settled by Rogers's personal automobile liability insurance carrier, plaintiff New Jersey Manufacturers Insurance Company ("Manufacturers"), for the sum of $17,500.
Rogers and Manufacturers seek a declaration that Snappy's statutorily required automobile liability insurance coverage provided by defendant Progressive Casualty Insurance Company ("Progressive") is primary and that Manufacturers's coverage is excess. They contend that a car rental company is required by N.J.S.A. 45:21-1 to -8 to provide its customers with certain minimum coverage and that treating such insurance as excess is an illegal escape clause. Snappy and Progressive, on the other hand, contend that both policies contain mutually repugnant excess coverage clauses and must be treated as co-primary. They contend that because they did not seek to completely avoid providing the minimum coverage required by New Jersey's mandatory insurance laws, of which N.J.S.A. 45:21-1 to -8 is a part, they were free to provide such insurance on an excess basis. Having done so, they argue that the policies of Manufacturers and Progressive containing mutually repugnant excess insurance clauses are co-primary.
*349 The Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62 is a remedial device designed to settle and afford relief from uncertainty and insecurity with respect to private rights and duties and thereby forestall the emergence of costly and cumbersome trial proceedings. National-Ben Franklin Fire Ins. Co. v. Camden Trust Company, 21 N.J. 16, 120 A.2d 754 (1956). The worthy purpose of the Act amply justifies the liberal construction accorded it. Id. at 22, 120 A.2d 754; Utility Blade and Razor Co. v. Donovan, 33 N.J. Super. 566, 111 A.2d 300 (App.Div. 1955).
No more fertile ground exists for the use of the declaratory judgment procedure than in the field of insurance. Condenser Service and Engr. Co., Inc. v. American Mut. Liability Ins. Co., 45 N.J. Super. 31, 38, 131 A.2d 409 (App.Div.), certif. den., 24 N.J. 547, 133 A.2d 395 (1957). The interpretation of contractual language is precisely the type of situation contemplated by the declaratory judgment statute.
We start then with the insurance policies at issue here. Manufacturers's policy insuring Rogers provides in Part A, Paragraph A, that Manufacturers "will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." The policy also provides:
If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. (Emphasis added.)
Manufacturers's policy does not purport to insure Snappy.
Progressive acknowledges that its policy insured Snappy with respect to the ownership, maintenance and use of the subject vehicle and that under Section IV(B)(5)(a) the policy was primary with respect to an automobile owned by Snappy, as was the case here. In addition, Rogers, using a covered auto with the permission of Snappy, was an insured under the omnibus clause found in Section II(A)(1) of the Progressive policy. However, Progressive contends in this case that it is entitled to the benefit of Section IV(B)(5)(c) which provides:

*350 When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.
Progressive argues that its insurance, like that of Manufacturers, is excess and thus "covers on the same basis" as does Manufacturers. To arrive at excess rather than primary insurance, Progressive turns to the "cut-back" endorsement of its policy. That endorsement reads:
It is hereby agreed that, for the purpose of this policy and any subsequent renewals, the insurance provided by this policy for the lessee, rentee, its servants, agents, or employees or those using the automobile with or without the permission of the lessee or rentee or persons alleged to be legally responsible for the use of the automobile is subject to the terms, including any limit of liability, conditions, restrictions, and limitations contained in the lease or rental agreement, providing our undertaking in this policy is not enlarged or extended.
We thus turn to the rental agreement signed by Rogers. The terms and conditions on the reverse side of the agreement provide in paragraph 6 in pertinent part as follows:
ONLY IF REQUIRED BY STATE LAW OR BY THE EXPRESS TERMS OF THIS AGREEMENT. Snappy will indemnify and hold harmless Renter and authorized operators only, during the term of this agreement, for bodily injury and property damage claims up to the minimum dollar amounts required for any one (1) rental vehicle per occurrence, by the applicable motor vehicle financial responsibility laws of the State in which this agreement of rental was executed.... However, if Renter is covered by any other insurance, the indemnification and hold harmless provisions of this agreement, shall be excess coverage. ... Notwithstanding the foregoing, if any of the conditions, restrictions, and/or terms of said indemnification and hold harmless provision conflict with the statutes of the State of rental, then said indemnification and hold harmless provision is amended to conform with the statutes of the State of rental to the extent so permitted, and in the event there is absolute statutory obligation to provide uninsured motorist coverage, then Snappy will provide the minimum coveraged [sic] allowed under said statute.
Snappy and Progressive argue from the underscored language that the rental agreement makes Progressive's policy excess whenever the renter is covered by "any other insurance." Rogers and Manufacturers contend that this rental agreement clause is unenforceable as an illegal escape clause prohibited by case law construing N.J.S.A. 42:21-1 to -8.
*351 The parties variously rely upon or seek to distinguish, explain or limit a relatively limited number of cases: American Surety Co. v. American Indemnity Co., 8 N.J. Super. 343, 72 A.2d 798 (Ch.Div. 1950); Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 147 A.2d 529 (1959); Rao v. Universal Underwriters Ins. Co., 228 N.J. Super. 396, 549 A.2d 1259 (App.Div. 1988); White v. Howard, 240 N.J. Super. 427, 573 A.2d 513 (App.Div. 1990); Selective Ins. Co. v. Charter Risk Retention Group Ins. Co., 261 N.J. Super. 1, 617 A.2d 664 (App.Div. 1992); and Kattoura v. Patel, 262 N.J. Super. 34, 619 A.2d 1031 (App.Div. 1993). We turn our attention to the seminal Chancery Division case.
The plaintiff in American Surety Co., supra, issued a policy of insurance to one Feller, who borrowed a truck from Ritter and Sussman while his insured truck was under repair. 8 N.J. Super. at 344, 72 A.2d 798. The borrowed truck, insured by Indemnity, was involved in an accident. Id. at 344-45, 72 A.2d 798. The Surety policy issued to Feller provided only excess insurance with respect to non-owned automobiles, as does Manufacturers's policy here. Id. at 347, 72 A.2d 798. The Indemnity policy issued to Ritter and Sussman, like the Progressive policy at issue here, defined "insured" to include permissive users, such as Feller. Id. at 348, 72 A.2d 798. The Indemnity policy provided for pro rata coverage of losses with all other valid and collectible insurance available to any insured. Id. Both policies, in the absence of the other, would have provided insurance. Id. at 349, 72 A.2d 798. In resolving the issue presented by the presence of both, Judge Jayne held "that a non-ownership clause with an excess coverage provision as embodied in the [Surety] policy does not constitute other valid and collectible insurance within the import and meaning of a primary policy with an omnibus clause," which provided for pro rata sharing of liability with other valid and collectible insurance. Id. at 350, 72 A.2d 798.
Snappy and Progressive seek to take themselves out of the scope of the American Surety holding. They argue that the cutback endorsement in the Progressive policy and the terms of the *352 Snappy rental agreement bring them to the field on which a somewhat different battle of conflicting insurance clauses was fought to a stalemate in Cosmopolitan Mut. Ins. Co., supra. Plaintiff Cosmopolitan insured tortfeasors Essex News and, under the omnibus clause, its employee McCollum, when operating owned, non-owned and hired vehicles used in the business of Essex News. 28 N.J. at 556, 147 A.2d 529. In cases where the insureds had other valid and collectible insurance that covered a loss, Cosmopolitan limited its liability to the proportion its limit of liability bore to the limits of all such insurance. Id. at 556-7, 147 A.2d 529. The policy went on, however, to provide that as to hired or non-owned vehicles only excess insurance over any other valid and collectible insurance would be available for any loss. Id. at 557, 147 A.2d 529.
Defendant Continental issued a policy to U-Drive-It Company covering the vehicle hired to Essex News and driven by McCollum on the day of the loss. 28 N.J. at 557, 147 A.2d 529. U-Drive-It was required by N.J.S.A. 45:21-1 to -8 to maintain such insurance on vehicles for hire. Id. Continental's policy, too, covered Essex News and McCollum as insureds under its omnibus clause. Id. It also provided that its policy would be excess insurance over any other valid and collectible insurance available to an insured. Id. Each policy, in the absence of the other policy, was primary; both policies, in the presence of the other were excess only. Id. at 558, 147 A.2d 529.
Cosmopolitan and Continental each contended that the other's insurance was primary and that its insurance was excess. 28 N.J. at 557, 147 A.2d 529. The trial court concluded that Continental's insurance was primary because U-Drive-It was required by N.J.S.A. 45:21-1 to maintain such insurance and Cosmopolitan's insurance, being excess, was not "valid or collectible" under the terms of Continental's policy. Id. at 558, 147 A.2d 529. The Supreme Court pointed out that each company intended that it would not be subject to liability until the limits of the other company's policy had been reached. Id. at 559, 147 A.2d 529. *353 Thus, unlike American Surety Co. where the court resolved a conflict between excess coverage and pro rata coverage, the Supreme Court had to resolve a conflict between two policies providing only excess insurance where any other valid and collectible insurance existed.
The Supreme Court reasoned that there can be no "excess" insurance in the absence of "primary" insurance; because neither policy was primary, neither could be excess. 28 N.J. at 562, 147 A.2d 529. Just as an excess insurance provision is inoperative in the absence of other insurance, so too, the Court reasoned, were mutually repugnant excess insurance provisions. Id. It thus held that "the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses." Id.
The Supreme Court went on to observe that the mandatory insurance requirements imposed by N.J.S.A. 45:21-1 did not militate against the conclusion thus reached because the rental company obtained and filed a liability policy, thus securing the interest of the public. The Court held that "[t]he statute does not require a policy issued in compliance therewith be primary insurance." 28 N.J. at 563, 147 A.2d 529. Reasoning that as long as the rental company's insurer would be liable in the absence of insurance covering the rentee, the Court held that the coverage contemplated by the statute had been satisfied. The Court concluded:
The question of whether the particular insurance is primary or excess is not a public matter but merely a concern of the insurance companies which have extended coverage to the risk.
[Ibid.]
In seeking to avoid the Cosmopolitan rule, Rogers and Manufacturers contend that the language of the rental agreement incorporated into Progressive's insurance policy through the cutback endorsement constitutes an illegal escape clause. We turn once again to the rental agreement. Six contiguous boxes in the left column on the face of the rental agreement deal with insurance, the first three of which are relevant here. The first box *354 contains the following statement under the heading "INSURANCE PROVISIONS":
IF RENTER'S INSURANCE FAILS FOR ANY REASON TO PROVIDE COVERAGE, AS REQUIRED HEREIN, RENTER SHALL BE SOLELY RESPONSIBLE.
The following text appears in the second box:
 THIS VEHICLE IS NOT COVERED FOR BODILY INJURY OR PROPERTY DAMAGE INSURANCE BY SNAPPY AND COVERAGE SHALL BE PROVIDED BY RENTER OR RENTER'S EXISTING INSURANCE.
RENTER'S INITIALS ____
This box was checked by Snappy and initialed by Rogers. The third box contains the following text:
 THIS VEHICLE IS COVERED FOR BODILY INJURY AND PROPERTY DAMAGE INSURANCE BY SNAPPY WITH LIMITS OF COVERAGE EQUAL TO THE MINIMUM STATUTORY REQUIREMENTS FOR FINANCIAL RESPONSIBILITY FOR THE STATE OF RENTAL.
RENTER'S INITIALS ____
This box was neither checked by Snappy nor initialed by Rogers.
Snappy and Progressive concede that the express terms of the rental agreement found in the first and second boxes under the heading "INSURANCE PROVISIONS" violate N.J.S.A. 45:21-1 and are unenforceable in New Jersey. Nevertheless, they contend that paragraph 6 on the reverse side of the rental agreement is enforceable despite Snappy's expressed effort to circumvent the requirements of N.J.S.A. 45:21-1 entirely. As noted earlier, that paragraph provides that Snappy will indemnify and hold Rogers harmless in accordance with state financial responsibility laws but that such coverage will be excess if Rogers "is covered by any other insurance." Snappy and Progressive argue that this provision creates two mutually repugnant excess insurance provisions requiring co-primary treatment under Cosmopolitan; Rogers and Manufacturers contend this result is precluded by Rao v. Universal Underwriters, Inc., supra, and other more recent Appellate Division decisions.
In Rao, Universal issued a policy to the lessor which provided insurance for the lessee but only to the extent that the lessee failed to provide insurance sufficient to satisfy the statutory *355 minimums. Rao v. Universal Underwriters, Inc., supra, 228 N.J. Super. at 398, 549 A.2d 1259. The policy read: "The portion of the limit applicable to persons or organizations required by law to be an INSURED is only the amount (or amount in excess of any other insurance available to them) needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE takes place." Id. at 399, 549 A.2d 1259.
Citing Cosmopolitan for the proposition that N.J.S.A. 45:21-1 to -8 does not allow for any escape in coverage by an owner where the lessee has its own coverage, the Appellate Division held that this statute requires that the owner of a rental vehicle provide the minimum insurance limits regardless of whether the lessee does so. Id. 228 N.J. Super. at 403, 549 A.2d 1259. The court acknowledged that this rule might in some cases result in a doubling of the protection available to the public. Id. at 403, 549 A.2d 1259. Nevertheless, it reasoned that the potential doubling of coverage is irrelevant since the statute does not permit an escape from coverage by an owner in situations where the lessee has his or her own coverage and proceeded to strike the parenthetical portion of the above-quoted exclusion as an illegal escape clause. Id. at 403-404, 549 A.2d 1259. The court then enforced the balance of the provision, reaffirming the validity of "step-down" coverage, so long as it did not fall below the statutory minimums. Id. at 402-403, 549 A.2d 1259.
Snappy and Progressive did not seek to provide insurance in an amount less than the statutorily mandated minimums. Rather they sought to provide such minimum insurance on an excess basis. Rao did not reach this issue and thus is not controlling. White v. Howard, supra, also provides Rogers and Manufacturers with little comfort.
In White, the self-insured car rental company, Agency Rent-A-Car, sought to completely avoid indemnifying renters from loss. White v. Howard, supra, 240 N.J. Super. at 431, 573 A.2d 513. Agency relied exclusively on its customers' primary insurance covering automobiles used as a temporary substitute while the *356 insured vehicle was under repair. However, Howard's policy did not provide primary insurance for substitute vehicles. Rather, the policy stated that "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance." 240 N.J. Super. at 431, 573 A.2d 513. Judge Dreier, commenting on Agency's effort to avoid self-insuring its customers, observed:
While Agency may choose to save insurance premiums by self-insuring its vehicles, it should not be permitted to do so partially at the expense of other insurers who normally would look to each other under the "other insurance" provisions of their policies, and who have set their rates accordingly.
[Id. at 433, 573 A.2d 513.]
Agency argued that its business was limited to renters who required temporary substitute vehicles while their covered cars were under repair and that insurers (who reimbursed their insureds for the cost of the rental) obtained the benefit of the lower rates Agency could set by relying on its customers' insurance. That argument did not obviate Agency's obligations under New Jersey's financial responsibility laws. As the Appellate Division observed:
We do not disapprove of this method of doing business, except to note that in the case before us Agency accepted a policy that did not provide for primary responsibility. Had it examined the policy, it either could have rejected Ms. Howard as a lessee, or might have sought a waiver of the other-insurance clause from Allstate, since Allstate was paying for the rental and thereby was taking advantage of the lower rates. Not having done this, Agency should not be heard to complain when we give effect to the other-insurance clause in Allstate's policy and consider Agency's certificate of self-insurance as the equivalent of "other collectible insurance" within the meaning of the Allstate policy.
[Id. at 434, 573 A.2d 513.]
The Appellate Division in White v. Howard was quite simply not presented with conflicting excess coverage clauses in two insurance policies, both of which covered the loss. Rather, it was faced with a rental company which sought to meet its obligations under N.J.S.A. 45:21-1 to -8 by relying exclusively on its customers' insurance even though customers' insurance in some cases was excess only. Agency did not agree to indemnify its customers on an excess basis. As a result, this case provides little guidance in resolving the dispute before this court.
*357 Like Agency in the White case, Approved Rental required its customers to provide liability and property damage coverage through their existing insurance policies' temporary substitute provisions. Selective Ins. v. Charter Risk, supra, 261 N.J. Super. at 2-3, 617 A.2d 664. The policy issued by Charter Risk to Approved Rental did not cover renters at all and Charter argued that N.J.S.A. 45:21-1 to -8, applied only to owners of rental vehicles and not their insurers. Id. at 3, 617 A.2d 664. Citing Rao, the Appellate Division observed that insurance policies filed in compliance with N.J.S.A. 45:21-2 and -3 were required to provide coverage to lessees without exception and held "that to the extent Charter's endorsement attempts to carve out or restrict required statutory coverage under N.J.S.A. 45:21-3 that it constitutes an illegal escape clause." Id. 261 N.J. Super. at 3-4, 617 A.2d 664.
Although Rogers and Manufacturers rely on Selective Ins., the Appellate Division there only held that insurers of rental companies whose policies are filed in compliance with N.J.S.A. 45:21-2 and -3 must include rentees as additional insureds. Again, the court did not reach the issue presented here: whether rentees could be provided with such minimum insurance on an excess basis.
Snappy and Progressive contend that despite the Appellate Division decisions discussed above, Cosmopolitan is still good law. In Kattoura v. Patel, supra, 262 N.J. Super. at 34, 619 A.2d 1031, the Appellate Division held that N.J.S.A. 45:21-1 to -8 did not preclude a lessor and lessee and their respective insurance companies from expressly agreeing that the insurance of one would be primary and the other excess, "so long as the agreement preserves the statutorily mandated protection extended to any injured party." 262 N.J. Super. at 41, 619 A.2d 1031. In doing so, the Appellate Division emphasized the holding in Cosmopolitan that "[t]he question of whether the particular insurance is primary or excess is not a public matter but merely a concern of the insurance companies which have extended coverage to the risk," *358 because N.J.S.A. 45:21-1 does not require that the rental company's policy be primary insurance. 262 N.J. Super. at 43, 619 A.2d 1031.
Snappy and Progressive clearly contravened N.J.S.A. 45:21-1 to -8 when Snappy completed its rental agreement by checking the boxes providing that the vehicle was uninsured. That express clause in the rental agreement is an illegal and unenforceable escape clause, as Snappy and Progressive concede. However, the balance of the rental agreement is enforceable. Paragraph 6 incorporates state law and provides that the agreement is amended to conform therewith. Even if such a savings clause did not exist, under Rao only the portion of the policy which violates the statute is to be stricken. Here, that portion is the provision on the face of the agreement that the vehicle is not insured through Snappy and must be insured by Rogers. Having stricken that portion of the rental agreement, the public interest is protected and the effect to be given the competing policies is "merely a concern of the insurance companies which have extended coverage to the risk." Kattoura v. Patel, 262 N.J. Super. at 43, 619 A.2d 1031.
There was no express agreement by Manufacturers and Progressive as to which policy would be primary and which would be excess, nor need there have been. We look only to the intent of each insurer. Each intended to provide insurance on an excess basis when any other insurance covered this type of loss. Both are presumed to have drafted their "other insurance" clause with existing case law in mind. Cosmopolitan was decided thirty years before the subject loss, Progressive was entitled to rely on it, and Manufacturers made no express effort to avoid the rule therein announced. For example, Manufacturers could have provided that it would insure against loss occurring while an insured was operating a hired vehicle on an excess basis only and not on a primary or co-primary basis. It could have chosen not to provide such coverage at all. Manufacturers did neither. As a consequence, *359 the excess clauses in both policies are mutually repugnant and the policies of Manufacturers and Progressive are co-primary.