**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0911-24

KEITH LOFTUS,

     Plaintiff-Respondent,

v.

TERESA LOFTUS,

     Defendant-Appellant.

_____

Submitted November 19, 2025 – Decided March 2, 2026

Before Judges Mayer and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-1611-01.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the brief).

Bronzino Law Firm, LLC, attorneys for respondent (Peter J. Bronzino, on the brief).

PER CURIAM

Defendant Teresa Loftus[1] appeals a Family Part order enforcing a $14,200 court-imposed sanction payable to plaintiff Keith Loftus, temporarily reducing plaintiff's $400-per-week permanent alimony obligation by $100 per week until the sanction is paid in full. We affirm.

I.

The parties were married in 1982 and have two emancipated children. They divorced in 2002. In February 2004, the parties entered into a consent order delineating their future obligations. Among other things, the order amended terms of the parties' property settlement agreement related to the sale of their former marital residence. Paragraph three of the consent order allowed defendant to remain in the residence subject to payment of $45,539.00 to plaintiff. The paragraph provides:

> The [d]efendant's buy-out of $45,539.00 shall be accomplished as follows:
>
> > a. Lisa E. Halpern, Esquire, currently has $36,312.35 in her trust account from the sale of the parties' rental properties. From that account, Lisa E. Halpern, Esquire, shall disburse payment to Dr. Sherman in the amount of $773.35 for the parties' minor child, Keith.

[1] We note that although defendant's name is listed as "Theresa" in the trial court's order, the record shows the correct spelling of her name is "Teresa," and we refer to her accordingly.

b.  After payment to Dr. Sherman, the balance remaining in the trust account of Lisa E. Halpern, Esquire, will be $35,539.00.  That amount shall be paid to Lisa E. Halpern, Esquire, on behalf of the [p]laintiff.  The [d]efendant shall be entitled to credit in the aforementioned amount toward the settlement described above.

c.  The [d]efendant shall effectuate a refinance of the former marital residence within twelve (12) months.  The [d]efendant shall work diligently to effectuate said refinance.  Joseph Gunteski is hereby authorized to contact all professionals involved in the refinance, including but not limited to the mortgage broker, attorney, etc.  From the proceeds of the refinance, the [d]efendant shall pay $10,000.00 to Lisa E. Halpern, Esquire, for the [p]laintiff, as the final payment of the settlement described above.  This payment shall be full satisfaction of the [p]laintiff's interest in the former marital residence and rental properties . . . .

In September 2022, pursuant to terms of the 2004 consent order, plaintiff moved to compel defendant to refinance or sell the former marital residence to effectuate the buy-out of the marital home.  In their pleadings, the parties informed the motion court that the mortgage on the former marital home was paid off and plaintiff had received $36,000, leaving a $10,000 balance.  The motion court issued an order on April 14, 2023, requiring defendant to pay

3

plaintiff the money owed for the buy-out, noting that because the mortgage had recently been satisfied, there was no need to refinance.

Defendant subsequently filed a motion for various forms of relief not pertinent to this appeal, and plaintiff cross-moved, seeking to suspend his alimony obligation until defendant's $10,000 obligation was paid. In a July 7, 2023 order, the court denied plaintiff's request without prejudice for failure "to provide sufficient detail for the [c]ourt to determine the nature of this alleged debt sufficient to enforce it . . . ."

In July 2023, plaintiff again moved to enforce defendant's obligation for the buy-out, providing additional details. Defendant cross-moved to compel plaintiff to provide proof of life insurance. On November 17, 2023, the court ordered defendant to pay the outstanding $10,000 sum owed to plaintiff within ten days of the order's entry. The order also granted defendant's requested relief, compelling plaintiff to provide proof he maintained a $100,000.00 life insurance policy for defendant's benefit. The order expressly provided that either party would be subject to sanction for failing to meet their respective obligations. Specifically, defendant would be entitled to "$100 per day from November 27, 2023 . . . to the date of [court-mandated] mediation," April 17, 2024. Plaintiff would be entitled to "'cross sanctions' of $100 per day for every day past

4

November 27, 2023 to the first day of mediation that [d]efendant fails to pay [plaintiff] the $10,000 for the buyout of the marital property."

Defendant sought reconsideration of the November 17, 2023 order, which the court denied. Plaintiff provided proof of his life insurance policy on November 29, 2023, two days after the court-ordered deadline. Defendant submitted to plaintiff's attorney a cashier's check for $10,000 post-dated May 1, 2024, rendering her subject to sanction for the 142 days from November 28, 2023, to April 17, 2024 mediation date.

On April 30, 2024, defendant again moved for various relief not at issue on appeal, and plaintiff cross-moved to enforce the sanctions in the November 17, 2023 order. On July 26, 2024, the court granted plaintiff's request to enforce the sanctions defendant owed to plaintiff. The court imposed sanctions of $14,200 on defendant, who was ordered to pay plaintiff $100 per week directly until the sanction sum was paid in full.

Defendant again sought reconsideration and requested sanctions against plaintiff. Plaintiff cross-moved for enforcement of sanctions against defendant. On November 8, 2024, the court denied defendant's requests but granted plaintiff's cross-motion, ordering defendant to pay $14,200 in sanctions directly

5

to plaintiff in the amount of $100 per week until satisfaction of the $14,200 sanction ordered in its July 26 order.

Defendant timely appealed. She contends the court applied the wrong standard of review—using the standard for reconsideration of a final order—arguing it should have applied the more flexible "interest of justice" standard applicable to interlocutory orders. Defendant also argues she was deprived of a hearing before the motion court imposed sanctions against her and that in fashioning a remedy to ensure payment of the sanctions, the court erred in reducing plaintiff's alimony obligation.

## II.

### A.

Sanctions are a tool utilized to deter litigants from failing to comply with court orders. See Holtham v. Lucas, 460 N.J. Super. 308, 322-25 (2019) (affirming a $150 per diem penalty for failure to comply with a marital settlement agreement). They are also a remedy to provide relief to a litigant to enforce compliance with an order. R. 1:10-3.

Rule 5:3-7(b) specifically addresses the use of sanctions in Family Part matters for a party who "has violated an alimony or child support order . . . ." However, the general rule applies to all other violations, where

6

"[n]otwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action." R. 1:10-3.  Furthermore, there is no restriction on who orders the relief:  "[a] judge shall not be disqualified because he or she signed the order sought to be enforced."  Ibid.  The Rule even extends to allow a court discretion to "make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under this rule."  Ibid.  "In family actions, the court may also grant additional remedies as provided by R[ule] 5:3-7."  Ibid.

"The scope of relief in a motion in aid of litigant's rights is limited to remediation of the violation of a court order."  Abbott v. Burke, 206 N.J. 332, 371 (2011).  Sanctions are intended to be coercive, not punitive, and Rule 1:10-3 authorizes the court to create and enforce sanctions.  See Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012); P.T. v. M.S., 325 N.J. Super. 193, 220 (App. Div. 1999).  "[A] monetary sanction imposed pursuant to R[ule] 1:10-3 is a proper tool to compel compliance with a court order."  Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997).  The amount of a sanction may vary, relying on the specifics of the individual situation: "[w]hile a monetary sanction payable to the aggrieved party is not necessarily limited to the amount of the aggrieved party's actual damage, it must nevertheless be rationally related to the

7

desideratum of imposing a 'sting' on the offending party within its reasonable economic means." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.4.3 to R. 1:10-3 (2025).

"We review a trial court's order enforcing litigant's rights pursuant to Rule 1:10-3 under an abuse of discretion standard." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018) (citing Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011)). "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

The imposition of sanctions, whether through an interlocutory order or a final order, are subject to reconsideration. To be considered final, an order must dispose of all issues as to all parties. Kattoura v. Patel, 262 N.J. Super. 34, 40 (App. Div. 1993). Any order that does not dispose of all issues is interlocutory and is "subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice." Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021) (quoting R. 4:42-2).

However, an order that disposes of all issues is final, Kattoura, 262 N.J. Super. at 40, and a request for reconsideration of a final order requires analysis

under Rule 4:49-2.  A motion for reconsideration of a final order "shall state with specificity the basis on which it is made."  R. 4:49-2.  To succeed on a reconsideration motion, a party must show either "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence."  D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).

Defendant's initial reconsideration motion challenged the November 17, 2023 order, which had resolved all claims.  The court thus properly treated that application as one for reconsideration of a final order.  The court addressed and rejected defendant's assertions that she was denied due process, that court staff destroyed her submissions, and that the sanction constituted cruel and unusual punishment or an excessive fine.  The court found no due process violation because, although defendant experienced technical difficulties attending the hearing by Zoom, she was represented by counsel who appeared and participated.  It also found no evidence supporting her claim that court staff destroyed filings.  As to the sanction itself, the court explained it was coercive, intended to compel compliance in a matter that had spanned twenty-two years. Applying Rule 4:49-2, the court denied reconsideration.

A-0911-24

In a subsequent motion, defendant again did not seek reconsideration of the ordered sanctions. Plaintiff, however, moved to enforce them. After the court ordered defendant to pay $100 per week until the $14,200 sanction was satisfied, defendant filed yet another motion to seek "reverse sanctions" against plaintiff. The court denied that request.

Defendant's notice of appeal lists only the November 8, 2024 order. That order did not seek reconsideration of the sanctions imposed against defendant. To the extent defendant's argument may be read to challenge an unspecified prior order, we conclude the motion court applied the appropriate standard of analysis for reconsideration under Rule 4:49-2 regarding defendant's requests to revisit the sanctions. See Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 461-62 (App. Div. 2002) ("it is clear that it is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review" (quoting Pressler, Current N.J. Court Rules, comment 6 on R. 2:5-1(f)(3)(i) (2002))).

Moreover, the court acted within its discretion in imposing sanctions, relying on credible evidence of the parties' extensive post-judgment motion practice. Based on the extensive motion practice in this case, the amount of the sanction was reasonable. Notably, when plaintiff first sought sanctions,

10

defendant requested that plaintiff be sanctioned in the same amount—$100 per day—for failing to provide proof of life insurance. See Innes v. Carrascosa, 391 N.J. Super. 453, 498 (App. Div. 2007) (affirming a per diem sanction increase from $100 to $500 due to the defendant's continued non-compliance with court orders pertaining to custody and return of the parties' child).

The November 17, 2023 order notified the parties that if either failed to comply with their court-ordered obligations, they would both be subject to sanctions. Plaintiff complied with his obligation and was not sanctioned. Defendant, by contrast, failed to act despite the court's warning that sanctions would be imposed.

Defendant's argument that she was denied a hearing on sanctions lacks merit. Defendant was represented by counsel at the November 17, 2023 hearing, where the court expressly warned noncompliance with its order would result in sanctions. She was also represented at the July 26, 2024 hearing. The motion included in the appendix does not seek reconsideration or assert an inability to pay as a basis for relief from sanctions. After retaining counsel, defendant submitted a reply certification that likewise did not claim inability to pay and instead requested only that the court deny plaintiff's request for sanctions. Although no hearing was held on November 8, 2024, defendant made no request

11

concerning the sanctions imposed and did not seek oral argument. We thus perceive no error in the motion court's action.

B.

Defendant argues the motion court erred in granting plaintiff's application to reduce the amount of weekly alimony payable to defendant. Defendant's argument focuses on a purported absence of a "substantial change in circumstances" to warrant modification of alimony.

Defendant correctly notes that a "change in circumstances" is needed to warrant modification of an alimony obligation. Lepis v. Lepis, 83 N.J. 139, 153 (1980). However, her argument mischaracterizes both the nature of plaintiff's application and the motion court's ruling. Plaintiff did not seek a modification of his alimony obligation. Instead, he requested permission to offset the sanctions defendant owed him against his existing alimony payments. The court implemented a temporary remedy to enforce defendant's obligation to pay sanctions for her noncompliance with a prior order.

Judicial discretion "is not and cannot be governed by any fixed principles and definite rules because the possible eventualities to be dealt with in the exercise of that power cannot be specifically catalogued." Smith v. Smith, 17 N.J. Super. 128, 132 (App. Div. 1951). Furthermore, Rule 1:10-3 does not limit

12

the relief the court may grant: "[t]he Family [Part] possesses broad equitable powers to accomplish substantial justice." Finger v. Zenn, 335 N.J. Super. 438, 446 (App. Div. 2000) (citing Weitzman v. Weitzman, 228 N.J. Super. 346, 358 (App. Div. 1988)).

The court's warning regarding the imposition of sanctions did not deter defendant, leading her to accumulate $14,200 in sanctions. The court thus acted within its discretion to order her to pay those sanctions. When defendant failed to make timely sanction payments, the court created a remedy to ensure a "just result in the light of the particular circumstances of the case." Slutsky v. Slutsky, 451 N.J. Super. 332, 356 (App. Div. 2017) (quoting Smith, 17 N.J. Super. at 132).

Further, the modification ordered is a temporary remedy within the sound discretion of the motion court. In Milne, for example, the trial court initially imposed sanctions for failure to comply with orders. But after holding an ability-to-pay hearing, the court eliminated the financial penalty in favor of 120 hours of community service. 428 N.J. Super. at 198-199; see also Brennan v. Brennan, 187 N.J. Super. 351, 353-54 (App. Div. 1982) (affirming the trial court's forgiveness of the defendant-father's child support arrearages as a means to compel plaintiff-mother to comply with defendant's visitation). Moreover,

13

we consider that defendant's full alimony will be restored upon the satisfaction of the sanction.

In sum, we conclude the motion court did not abuse its discretion by temporarily reducing plaintiff's alimony obligation. Instead, the court crafted an appropriate remedy by temporarily reducing plaintiff's alimony obligation, thereby offsetting the defendant's sanction obligation based on sufficient and credible evidence of defendant's noncompliance with the court's orders.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

14

A-0911-24